SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**H.S.P. v. J.K.** (A-114-13) (074241)
**K.G. v. M.S. (Deceased)** (A-117-13) (074527)

**Argued April 14, 2015 -- Decided August 26, 2015**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In these appeals, the Court examines the role of New Jersey state courts, pursuant to 8 U.S.C.A. § 1101(a)(27)(J) and its implementing regulation, 8 C.F.R. § 204.11, in making the predicate findings necessary for a non-citizen child to apply for "special immigrant juvenile" (SIJ) status, which is a form of immigration relief permitting alien children to obtain lawful permanent residency and, eventually, citizenship, under the Immigration Act of 1990, as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA).

M.S., who was born in India in 1994, entered the United States without proper documentation in July 2011. In India, M.S. resided with his mother, J.K., after the family was abandoned by M.S.'s father when M.S. was four years old. When M.S. was fifteen, J.K. became ill and could no longer work. M.S. took a job as a construction worker, working approximately seventy-five hours per week and developing a skin condition and back problems. Fearing that M.S. would die if he remained in India, J.K. arranged for him to travel to the United State to live with her brother, petitioner H.S.P. Since arriving in the United States, M.S. has remained in close contact with his mother via weekly telephone calls.

In May 2012, H.S.P. filed a petition in the Family Part requesting that he be granted custody of M.S. and that the court issue a predicate order, pursuant to 8 U.S.C.A. § 1101(a)(27)(J) and its implementing regulation, 8 C.F.R. § 204.11, finding that M.S. meets the statutory requirements to be a special immigrant juvenile. Specifically, H.S.P. asked that, under the statute, the court find that reunification with "1 or both" of M.S.'s parents was not viable due to abuse, neglect, or abandonment and that returning to India would not be in M.S's best interests, allowing M.S. to then apply to the United States Citizenship and Immigration Services (USCIS) for SIJ status. Although the court awarded temporary custody to H.S.P., it did not find that either of M.S.'s parents had willfully abandoned him and, consequently, did not reach the question of his best interests. H.S.P. appealed, and, in a published decision, the Appellate Division affirmed. H.S.P. v. J.K., 435 N.J. Super. 147 (App. Div. 2013). The panel agreed that M.S. was not abandoned or neglected by J.K because, although permitting a child to be employed in a dangerous activity constitutes abuse under New Jersey law, it did not contravene the laws of India. The panel also affirmed the trial court's refusal to make a best interests finding. This Court granted H.S.P.'s petition for certification. 218 N.J. 532 (2014).

J.S.G., born in 1998, and K.S.G., born in 2001, are the biological daughters of K.G. (their mother) and M.S. (their father), natives of El Salvador. After separating from M.S. in 2008, K.G. came to the United States, although she remained in near-daily contact with her daughters and sent money for their support. M.S. was murdered in 2013, and the children were cared for by M.S.'s mother, who K.G. believed may have been physically abusing the girls. Shortly after M.S.'s death, a threat was made on his mother's life, as well as the lives of J.S.G. and K.S.G. K.G. arranged for her daughters to come to the United States, but they were apprehended by immigration enforcement agents when crossing at the United States-Mexican border. Removal proceedings commenced, although the girls ultimately went to live with their mother in Elizabeth. In March 2014, K.G. filed a complaint in the Family Part seeking custody of her daughters and requesting that the court make the predicate findings to permit them to apply for SIJ status.

The court granted K.G.'s application for custody. It also found that reunification with M.S. was not viable because he was deceased, and that it was not in the children's best interests to return to El Salvador because no family member could care for them there. However, the court determined that reunification with K.G. was viable, and that there was no basis under state law to suggest she had abused, neglected, or abandoned her daughters. Based on that determination, and in reliance on the Appellate Division's decision in H.S.P., the court denied the children's application for SIJ status. This Court granted K.G.'s motion for direct certification. 220 N.J. 493 (2014).

**HELD:** When faced with a request for an SIJ predicate order, the Family Part's sole task is to apply New Jersey law to make factual findings with regard to each of the requirements list in 8 C.F.R. § 204.11. The Family Part does

not have jurisdiction to grant or deny applications for immigration relief.

1. The 1952 Immigration and Nationality Act (INA), 8 U.S.C.A. §§ 1101-1537, is the cornerstone of United States immigration law and includes protections for abused, neglected, or abandoned children who illegally entered the United States. In accordance with 8 U.S.C.A. § 1101(a)(27)(J), an undocumented minor immigrant is eligible for classification as a "special immigrant juvenile," which affords the minor relief from deportation and the opportunity to apply for permanent residency. The SIJ scheme was most recently amended in 2008 with the enactment of the TVPRA, which inserted language requiring that the child not be able to reunify with "1 or both" parents because of "abuse, neglect, abandonment, or a similar basis" under state law. 8 U.S.C.A. § 1101(a)(27)(J)(i). The current iteration of the statute also requires a finding that it would not be in the juvenile's best interest to be returned to his or her previous country of nationality. 8 U.S.C.A. § 1101(a)(27)(J)(ii). The process for obtaining SIJ status is a unique, two-step, hybrid procedure involving both state and federal systems. Specifically, the child, or an individual acting on his or her behalf, must first petition a state juvenile court for an order making findings that the child satisfies certain criteria, including the requirements contained in 8 U.S.C.A. § 1101(a)(27)(J)(i) and (ii) and 8 C.F.R § 204.11. This predicate order is not an immigration determination, but merely a prerequisite that must be fulfilled prior to the second step of the process, which is submission of the application for SIJ status to USCIS. (pp. 16-20)

2. The legislative scheme relating to SIJ status demonstrates that the determination of whether a child should be classified as a special immigrant juvenile rests squarely with the federal government. Congress opted to rely on state courts as the appropriate forum for making initial factual findings because of their special expertise in making abuse and neglect determinations, evaluating the best interest factors, and ensuring appropriate custodial arrangements. However, there can be no legitimate argument that a New Jersey family court has jurisdiction to approve or deny a child's application for SIJ status. Rather, pursuant to the SIJ statute, a state court makes predicate factual findings relative to a juvenile's eligibility, and the juvenile then presents those findings to USCIS, which makes the ultimate decision as to whether or not the application for SIJ status should be granted. This comports with the well-established rule that the regulation of immigration is exclusively a federal power. (pp. 20-22)

3. The Family Part, when performing its closely circumscribed task of making specified predicate factual findings, is required to apply New Jersey law, and not that of a foreign nation. This conclusion is supported by the plain language of 8 U.S.C.A. § 1101(a)(27)(J)(i), which requires a petitioner to show that reunification with "1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis under State law." In light of the limited role played by the New Jersey Family Part in SIJ proceedings, the Court declines to interpret the "1 or both" language of the statute, finding that such a task is exclusively the province of the federal government. However, in order to ensure that factual findings issued by New Jersey courts provide USCIS with the information required to determine whether a given alien satisfies the eligibility criteria for SIJ status, the Court instructs courts of the Family Part to make separate findings as to abuse, neglect, and abandonment with regard to both legal parents of an alien juvenile. Finally, the determination of whether an immigrant's purpose in applying for SIJ status matches with Congress's intent in creating that avenue of relief is properly left to the federal government. (pp. 22-25)

4. While reviewing courts give deference to a trial court's factual findings, no deference is owed to legal conclusions drawn by the trial court. With respect to the specific facts of H.S.P., the Court reverses and remands that aspect of the Appellate Division judgment finding that M.S.'s employment did not constitute abuse or neglect because H.S.P. failed to demonstrate that it was contrary to the laws of India. The Family Part is instructed to conduct an analysis, under New Jersey law, of whether reunification with each of M.S.'s legal parents is viable due to abuse, neglect or abandonment, in addition to making the other required findings under 8 C.F.R. § 204.11. With respect to K.G., the Court concludes that the trial court's factual determinations were supported by competent, credible evidence. However, the trial court erred in purporting to deny K.S.G.'s and J.S.G.'s applications for SIJ status. That determination is reversed and remanded, with instructions to the Family Part to make findings regarding each element of 8 C.F.R § 204.11, mindful that its sole purpose is to make those factual findings and not to adjudicate the children's applications for SIJ status. (pp. 26-28)

The judgment of the Appellate Division in H.S.P. is **REVERSED** and the matter is **REMANDED** to the Family Part for a new hearing conducted in accordance with this decision. The judgment of the trial court in K.G. is likewise **REVERSED** and **REMANDED**.

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA and SOLOMON join in JUDGE CUFF's opinion. CHIEF JUSTICE RABNER did not participate.**

H.S.P.,

    Plaintiff-Appellant,

       v.

J.K.,

    Defendant.

_____

K.G.,

    Plaintiff-Appellant,


       v.

M.S. (DECEASED),

    Defendant.
------------------------------------
IN THE MATTER OF J.S.G.
AND K.S.G. (MINORS)


        Argued April 14, 2015 – Decided August 26, 2015

        H.S.P. v. J.K. (A-114-13):  On certification
        to the Superior Court, Appellate Division,
        whose opinion is reported at 435 N.J. Super.
        147 (App. Div. 2014).

        K.G. v. M.S. (A-117-13):  On appeal from the
        Superior Court, Chancery Division, Union
        County.

        Francis X. Geier argued the cause for
        appellant in H.S.P. v. J.K. (Lowenstein

1

Sandler, attorneys; Mr. Geier and Melinda M. Basaran on the brief).

Randi S. Mandelbaum argued the cause for amici curiae Ms. Mandelbaum, Farrin Anello, Jenny-Brooke Condon, Anne E. Freedman, Joanne Gottesman, Anjum Gupta, Kevin B. Kelly, Solangel Maldonado, Jessica Miles, Kimberly M. Mutcherson, Lori A. Nessel, Meredith Schalick, Sandra Simkins, and Carol A. Wood in H.S.P v. J.K. (Ms. Mandelbaum, Ms. Gottesman, Ms. Schalick, and Sarah Koloski Regina on the brief).

A. Matthew Boxer argued the cause for amici curiae American Friends Service Committee, Kids in Need of Defense, and The Young Center for Immigrant Children's Rights in H.S.P. v. J.K. (Lowenstein Sandler, attorneys; Mr. Boxer, Catherine Weiss, Eric Jesse, and Kathryn S. Pearson on the brief).

Randi S. Mandelbaum argued the cause for appellant in K.G. v. M.S. (Ms. Mandelbaum and Sarah Koloski Regina on the brief).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

In this appeal, we examine the role of our state courts in making the predicate findings necessary for a non-citizen child to apply for "special immigrant juvenile" (SIJ) status under the Immigration Act of 1990, as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Pub. L. No. 110-457, 122 Stat. 5044. SIJ status is a form of immigration relief permitting alien children to obtain lawful permanent residency and, eventually, citizenship. To obtain SIJ status, a juvenile must complete a two-step process:

2

first, the juvenile must apply to a state court for a predicate order finding that he or she meets the statutory requirements; second, he or she must submit a petition to United States Citizenship and Immigration Services (USCIS) demonstrating his or her statutory eligibility.  8 C.F.R. § 204.11[1] details the findings that must be made by a juvenile court before an alien's application for SIJ status will be considered by USCIS: in addition to a series of factual requirements, the juvenile must demonstrate that reunification with "1 or both" of his or her parents is not viable due to abuse, neglect, or abandonment. The court is then required to determine whether it is in the juvenile's best interests to return to his or her home country.

The Family Part plays a critical role in a minor immigrant's attempt to obtain SIJ status but that role is closely circumscribed.  The Family Part's sole task is to apply New Jersey law in order to make the child welfare findings required by 8 C.F.R. § 204.11.  The Family Part does not have jurisdiction to grant or deny applications for immigration relief.  That responsibility remains squarely in the hands of the federal government.  Nor does it have the jurisdiction to

---

[1] The full citation for this regulation is:  Special immigrant status for certain aliens declared dependent on a juvenile court (special immigrant juvenile), 8 C.F.R. § 204.11 (2014).  For the sake of brevity, we refer to this regulation as 8 C.F.R. § 204.11.

3

interpret federal immigration statutes. The Family Part's role in the SIJ process is solely to apply its expertise in family and child welfare matters to the issues raised in 8 C.F.R. § 204.11, regardless of its view as to the position likely to be taken by the federal agency or whether the minor has met the requirements for SIJ status. To that end, Family Part courts faced with a request for an SIJ predicate order should make factual findings with regard to each of the requirements listed in 8 C.F.R. § 204.11. When analyzing whether reunification with "1 or both" parents is not viable due to abuse, neglect, or abandonment, the Family Part shall make separate findings as to each parent, and that determination shall be made by applying the law of this state. This approach will provide USCIS with sufficient information to enable it to determine whether SIJ status should be granted or denied, in accordance with the statutory interpretation of the SIJ provision applied by that agency.

Accordingly, we reverse the Appellate Division's decision in H.S.P. and the Family Part's decision in K.G. Both failed to address all of the requirements identified in 8 C.F.R. 204.11. The panel in H.S.P. also improperly applied the law of the child's country of origin rather than the law of this state to address whether the juvenile had been abused, neglected, or

4

abandoned in his or her home country.  We remand both cases for further findings consistent with this opinion.

I.

A.

M.S., born in India on December 14, 1994, entered the United States without proper documentation in July 2011.  Since then, he has resided with his uncle, petitioner H.S.P., and H.S.P.'s family in Passaic County.  Prior to coming to the United States, M.S. resided with his mother, respondent J.K., and two older siblings.  M.S.'s father abandoned the family when M.S. was four years old.  M.S.'s siblings both died of unknown causes when each was seventeen years old.  M.S. believes that their deaths resulted from malnourishment, unsanitary living conditions, the unavailability of medical care, and heart problems.  When M.S. was fifteen, J.K. became ill and was unable to work.  M.S. and J.K. moved in with J.K.'s mother, and M.S. stopped attending school and took a job as a construction worker.  M.S. worked approximately seventy-five hours a week at a construction site located more than two miles from the family home.  The work caused M.S. to develop a skin condition and occasional back problems.

At some point, M.S. became ill.  J.K. feared that he would die if he remained in India.  She arranged for him to travel to the United States to live with her brother, H.S.P.  M.S. entered

5

the United States by walking across the United States-Mexico border in July 2011.  Since arriving in the United States, M.S. has not had any health problems.  He and J.K. remain in close contact via weekly telephone calls.

In May 2012, H.S.P. filed a petition in the Family Part requesting that he be granted custody of M.S.  The petition identified J.K. as the respondent; however, in actuality, the two acted in concert to bring the petition.  H.S.P. also requested that the Family Part make the required findings to classify M.S. as a special immigrant juvenile under 8 U.S.C.A. § 1101(a)(27)(J) and its implementing regulation, 8 C.F.R. § 204.11.

The Family Part conducted a custody hearing on September 27, 2012.  The trial court awarded temporary custody of M.S. to H.S.P.  Turning to the SIJ predicate findings, the court concluded that neither parent had "abandoned" M.S.  It reasoned that "abandonment" required an affirmative act by a parent willfully forsaking the obligations owed to his or her child. The trial court credited testimony suggesting that M.S.'s father was an alcoholic or a drug addict, but determined that the evidence of record was insufficient to establish that he had willfully abandoned his son.  Moreover, the trial court found that J.K. had not abandoned M.S.  In contrast, J.K. remained actively involved in M.S.'s life.  J.K.'s concern for M.S.'s

6

best interests was evidenced by her decision to send M.S. to the United States and assist H.S.P. in attaining custody of her son. Because it did not find that M.S. had been abandoned or neglected, the court did not reach the question of whether it would be in his best interests to remain in the United States or be returned to India.

H.S.P. appealed.  The Appellate Division affirmed the trial court's determination that M.S. was not abandoned or neglected by J.K., finding that she was financially unable to provide better care.  H.S.P. v. J.K., 435 N.J. Super. 147, 159, 171 (App. Div. 2013).  The panel noted that permitting a child to be employed in a dangerous activity constitutes abuse under New Jersey law, but found that petitioner failed to demonstrate that M.S.'s employment contravened the laws of India.  Id. at 160. The panel reversed the trial court's finding with regard to abandonment by M.S.'s father, finding that a "total disregard of parental duties" was sufficient to constitute abandonment.  Id. at 171.  Despite that finding, the panel affirmed the trial court's refusal to make a best interests finding pursuant to 8 U.S.C.A. § 1101(a)(27)(J)(ii).  Ibid.  The panel held that petitioner was not entitled to such a finding because he had not demonstrated that reunification with "neither" parent was viable due to abuse, neglect, or abandonment.  Id. at 166.

7

This Court granted H.S.P.'s petition for certification. 218 N.J. 532 (2014). We also permitted the American Friends Service Committee (AFSC), Kids in Need of Defense (KIND), the Young Center for Immigrant Children's Rights (YCICR), and, in their individual capacities, numerous New Jersey law school professors specializing in family and immigration law, to appear as amici curiae.

B.

J.S.G., born December 1, 1998, and K.S.G., born April 30, 2001, are the biological daughters of K.G. (their mother) and M.S. (their father). K.G. and M.S., who are natives of El Salvador, married in 1998 and lived together in their home country for approximately ten years before separating. In January 2008, K.G. left El Salvador to come to the United States. J.S.G. and K.S.G. remained in El Salvador under the care of their father and his mother. After K.G.'s departure, she and her daughters remained in near-daily contact through telephone and video-conference calls. K.G. frequently sent money to M.S. for the care and support of J.S.G. and K.S.G.

M.S. was murdered by members of a local gang on April 13, 2013. His family believes that he was killed because he refused to pay a fee demanded by the gang. After his death, the children remained in the care of M.S.'s mother. At some point, during a video-conference with J.S.G. and K.S.G., K.G. observed

8

bruises on K.S.G.'s face.  This caused K.G. to believe that M.S.'s mother was physically abusing the girls.  M.S.'s death was not the family's first interaction with gang violence.  In summer 2012, when J.S.G. was twelve years old, she was raped by an acquaintance.  She identified him as a member of the "18"[2] gang based on his piercings, tattoos, and hairstyle.  At some point after the rape -- which she did not reveal to her mother until after arriving in the United States -- J.S.G. attempted suicide.

Shortly after M.S.'s death, his mother received a telephone call, wherein the caller threatened to kill her, J.S.G., and K.S.G. if they did not leave their home.  K.G. arranged for J.S.G. and K.S.G. to stay with her sister until she could save enough money to bring them to the United States.  Their grandmother went to a son's house.  The girls remained with their maternal aunt for approximately twenty days, after which they began the journey to the United States.

J.S.G. and K.S.G. entered the United States in June 2013 by crossing the United States-Mexico border.  At that time, they were apprehended by immigration enforcement agents and removal

---

[2] This is apparently a shorthand reference to a group known as M-18, a transnational criminal organization considered a major threat to public security in El Salvador.  U.S. Dept. of State, Bureau of Diplomatic Security, El Salvador 2013 Crime and Safety Report 9 (2013).

proceedings were initiated. J.S.G. and K.S.G. were transferred to a shelter in Chicago, Illinois run by the Office of Refugee Resettlement (ORR). On July 27, 2013, ORR released both girls to K.G.'s care. They continue to reside at her home in Elizabeth. While in removal proceedings, both girls applied for SIJ status.

On March 18, 2014, K.G. filed a complaint in the Family Part seeking custody of J.S.G. and K.S.G. and requesting that the court make the predicate findings to permit them to apply for SIJ status. The Family Part conducted a hearing on April 28, 2014. After hearing testimony from K.G., J.S.G., and K.S.G., the court granted K.G.'s application for custody of her daughters.

The trial court then addressed the predicate findings for SIJ status. The court determined that both girls were less than twenty-one years of age, unmarried, and dependent on the court. The court found that reunification with M.S. was not viable because he was deceased, and that it was not in the children's best interests to return to El Salvador because their grandmother was incapable of caring for them and there were no other family members able to assume that role. The trial court found no basis under state law to suggest that K.G. had abused, neglected, or abandoned the children. Instead, the court concluded that she had provided for them financially and

10

remained involved in their lives after moving to the United States. The court determined that reunification with K.G. was viable, noting that the children were living with her at the time of the hearing. Based on that determination, and in reliance on the Appellate Division's decision in H.S.P., the court denied the children's application for SIJ status.

K.G. filed a notice of appeal with the Appellate Division and, subsequently, a motion for direct certification pursuant to Rule 2:12-2. This Court granted certification. K.G. v. M.S., 220 N.J. 493 (2014).

## II.

### A.

H.S.P. contends that the Appellate Division misapplied the SIJ standard when it applied the law of India, and not that of New Jersey, in determining that M.S. had not been abused. H.S.P. reasons that the relevant inquiry was whether M.S.'s treatment constituted abuse as defined by New Jersey law. He contends that, measured by the proper standard, M.S. suffered abuse when he was forced to leave school at age fifteen to work long hours at a construction site, which caused him to develop back pain and a skin condition. He asserts that the improper reliance on foreign law led the Appellate Division to the erroneous conclusion that M.S. was not abused, and created a "dangerous precedent" requiring New Jersey courts to undertake

the "unrealistic task" of researching and applying the laws of a child's home country when making findings under 8 U.S.C.A. § 1101(a)(27)(J).

H.S.P. also argues that the Appellate Division erroneously evaluated the "neglect" prong of the SIJ statute by focusing "almost exclusively" on whether the neglect was "intentional." In reliance on this Court's decision in G.S. v. Department of Human Services, 157 N.J. 161 (1999), H.S.P. asserts that the proper inquiry is whether the guardian's conduct was grossly negligent. Here, J.K.'s conduct in permitting M.S. to work long hours in a construction job and failing to provide basic care and medical attention constituted gross negligence, even in the absence of any intent to harm him. H.S.P. further contends that J.K.'s conduct in sending a sick child to make a perilous journey overseas without supervision constitutes abandonment under N.J.S.A. 9:6-1(b).

Next, H.S.P. argues that the Appellate Division misinterpreted the "1 or both" language of 8 U.S.C.A. § 1101(a)(27)(J)(i). H.S.P. reasons that the panel disregarded Congress's specific requirement that "reunification with 1 or both [parents] is not viable," 8 U.S.C.A. § 1101(a)(27)(J)(i), and substituted its own, more onerous requirement that reunification with "neither" parent be viable. H.S.P. asserts that this result improperly renders the "1 or both" language a

12

nullity and ignores the fundamental legislative purpose of the SIJ statute. Finally, H.S.P. notes that the Appellate Division's interpretation conflicts with the interpretation relied upon by USCIS, which routinely grants petitions based on a family court's determination that reunification with only one parent is not viable.

Respondent J.K. did not file a brief.

Amici curiae New Jersey Law School Professors Specializing in Family Law and Immigration Law, in their individual capacities, assert that the Appellate Division improperly relied on Indian law, instead of New Jersey law, in determining that M.S. had not been abused or neglected by his mother. Amici also assert that the Appellate Division erroneously applied an "intent" standard in concluding that J.K. had not neglected M.S. Amici argue that, had the panel properly applied the wanton or reckless standard, it would have concluded that J.K.'s action in sending M.S. to work long days in a dangerous job created a substantial risk of harm and therefore constituted neglect.

Amici AFSC, KIND, and YCICR argue that, in performing what should have been a straightforward review of the trial court's factual findings, the Appellate Division erred in interpreting the "1 or both" language in a manner contradictory to its plain language. Amici argue that, in limiting SIJ eligibility to cases where "reunification with neither parent is viable," the

13

Appellate Division decision effectively strikes "1 or both" from the statute in derogation of the canon against "'interpreting any statutory provision in a manner that would render another provision superfluous.'" (Quoting Bilski v. Kappos, 561 U.S. 593, 608, 130 S. Ct. 3218, 3228, 177 L. Ed. 2d 792, 805 (2010)). Amici contend that nothing in the legislative history supports the Appellate Division's interpretation of the "1 or both" language, and that the plain language of the statute comports with Congress's intent to protect immigrant children who have been abused, neglected, or abandoned. They argue that the Appellate Division's interpretation is further undermined by that of USCIS, the federal agency charged with applying the SIJ statute, which routinely grants SIJ petitions based on a state court's determination that reunification with only one parent is not viable due to abuse, neglect, or abandonment.

K.G. asserts that the Family Part confused its role and overstepped its jurisdictional authority by interpreting her request for an SIJ predicate order as an invitation to adjudicate her daughters' application for SIJ status. K.G. reasons that Congress inserted state courts into the SIJ process because of their experience and proficiency in adjudicating child welfare matters; however, the state court enjoys no corresponding expertise with regard to federal immigration law. In K.G.'s view, the state court's role in an SIJ case is

strictly limited to identifying abused, neglected, or abandoned children, and USCIS, the agency charged with overseeing lawful immigration to the United States, is the sole body charged with adjudicating applications for SIJ status.

Next, K.G. asserts that the trial court erred by relying on the appellate panel's determination in H.S.P. that SIJ status is limited to children who cannot be reunited with either parent. K.G. asserts that, contrary to that ruling, Congress intended SIJ status to be available to children who could not be reunited with both biological parents; children who can be reunited with only one fit parent are therefore eligible for SIJ status. Accordingly, the trial court's inquiry should have ended when it determined that reunification with the children's father, who is deceased, was not viable. K.G. asserts that this interpretation is supported by the plain language of the statute, Congress's purpose in enacting it, and the weight of authority from other jurisdictions. Importantly, K.G. argues this interpretation is also supported by USCIS -- the agency charged with administering the statute -- which consistently permits children living in the custody of one fit parent to obtain SIJ status.

Finally, K.G. asserts that this case must be distinguished from H.S.P. for three reasons: first, J.S.G. and K.S.G. face a specific and direct threat of harm if returned to El Salvador; second, they do not have a safe or appropriate caregiver in

15

their home country; and third, they are presently in removal proceedings.

## III.

The 1952 Immigration and Nationality Act (INA), 8 U.S.C.A. §§ 1101–1537, remains the cornerstone of United States immigration law.  In 1990, Congress amended the INA to include protections for "abused, neglected, or abandoned children who, with their families, illegally entered the United States." Yeboah v. U.S. Dep't of Justice, 345 F.3d 216, 221 (3d Cir. 2003).  In accordance with 8 U.S.C.A. § 1101(a)(27)(J), as added by Pub. L. 101–649, § 153, an undocumented minor immigrant is eligible for classification as a "special immigrant juvenile," which would afford him or her relief from deportation and the opportunity to apply for lawful permanent residency.  Yeboah, supra, 345 F.3d at 221.

The SIJ scheme has since been amended several times.  The most recent amendment occurred in 2008, when Congress enacted the TVPRA.  The SIJ amendments implemented by the TVPRA were intended to expand SIJ classification to include protections for minor victims of human trafficking.  Notably, the TVPRA liberalized the requirements for SIJ status by eliminating the requirement that the child be eligible for long-term foster care.  See 8 U.S.C.A. § 1101(a)(27)(J)(i).  The TVPRA inserted language requiring that the child not be able to reunify with "1

16

or both" parents because of "abuse, neglect, abandonment, or a similar basis" under state law.  See ibid.  Thus, the present iteration of the statute defines a "special immigrant juvenile" as a juvenile

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[.]
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence[.]
>
> [8 U.S.C.A. § 1101(a)(27)(J).]

The process for obtaining SIJ status is "'a unique hybrid procedure that directs the collaboration of state and federal systems.'"  In re Marisol N.H., 115 A.D.3d 185, 188 (N.Y. App. Div. 2014) (quoting In re Hei Ting C., 109 A.D.3d 100, 104 (N.Y. 2013)); E.C.D. v. P.D.R.D. 114 So. 3d 33, 36 (Ala. Civ. App. 2012) (explaining that SIJ statute creates "a special circumstance 'where a state juvenile court is charged with addressing an issue relevant only to federal immigration law.'" (quoting In re J.J.X.C., 734 S.E.2d 120, 124 (Ga. 2012)).  The

17

child -- or another individual acting on his or her behalf -- must first petition for "'an order from a state juvenile court making findings that the juvenile satisfies certain criteria.'" Simbaina v. Bunay, 109 A.3d 191, 197-98 (Md. Ct. Spec. App. 2015) (quoting In re Marcelina M.-G. v. Israel S., 112 A.D.3d 100, 107 (N.Y. App. Div. 2013)).  The juvenile court must make the following findings:

> (1) The juvenile is under the age of 21 and is unmarried;
>
> (2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court;
>
> (3) The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles;
>
> (4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; and
>
> (5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence within the meaning of 8 U.S.C.A. § 1101(a)(27)(J)(ii); 8 C.F.R. § 204.11(a), (d)(2)(iii) [amended by TVPRA 2008].
>
> [In re Dany G., ___ A.3d ___, ___ (Md. Ct. Spec. App. 2015) (slip op. at 7) (internal citations omitted) (citing 8 C.F.R. § 204.11(a), (c) & (d); 8 U.S.C.A. § 1101(a)(27)(J)).]

18

"By making these preliminary factual findings, the juvenile court is not rendering an immigration determination." Marcelina M.-G., supra, 112 A.D.3d at 109 (citation omitted); J.J.X.C., supra, 734 S.E.2d at 123; 3-35 Immigration Law and Procedure § 35.09(3)(a) (Matthew Bender 2013)). The aptly named state court "predicate" order is merely a prerequisite that must be fulfilled before a juvenile can submit his or her application for SIJ status to USCIS in the form of an I-360 petition. If USCIS approves the juvenile's I-360, he or she will be granted SIJ status. Perez-Olano v. Gonzalez, 248 F.R.D. 248, 254 (C.D. Cal. 2008) (citing 8 C.F.R. § 204.11; Application, 8 C.F.R. § 1245.2(a)(1)(i) (2014)).

After obtaining SIJ status, a child is permitted to apply for adjustment of status under 8 U.S.C.A. § 1255, in an effort to obtain legal permanent residency, and, eventually, U.S. citizenship. 8 U.S.C.A. § 1255 permits SIJs to circumvent various admissibility requirements that might otherwise prevent them from obtaining permanent residency. For example, an SIJ is not required to demonstrate that he or she is unlikely to become a public charge or that he or she did not come to the United States for the purpose of performing unskilled labor. 8 U.S.C.A. § 1255(h)(2)(A). Likewise, minors classified as special immigrant juveniles are not prevented from obtaining legal permanent resident status because they entered the country

19

without inspection, do not hold an unexpired immigrant visa or other valid entry document, or have accrued more than 180 days of unlawful presence in the United States.  Ibid.

IV.

We take this opportunity to comment on and clarify the limited role played by New Jersey State courts in the SIJ application process.  Our review of the legislative scheme relating to SIJ status demonstrates that the determination of whether a child should be classified as a special immigrant juvenile rests squarely with the federal government.  "Congress chose to rely on state courts to make [initial factual findings] because of their special expertise in making determinations as to abuse and neglect issues, evaluating the best interest factors, and ensuring safe and appropriate custodial arrangements."  Meghan Johnson & Kele Stewart, Unequal Access to Special Immigrant Juvenile Status: State Court Adjudication of One-Parent Cases, American Bar Association (July 14, 2014), http://apps.americanbar.org/litigation/committees/childrights/content/articles/summer2014-0714-unequal-access-special-immigrant-juvenile-status-state-court-adjudication-one-parent-cases.html.

"The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests."  In re Y.M., 144 Cal. Rptr. 3d 54, 68

20

(Cal. App. Div. 2012) (citing Perez-Olano, supra, 248 F.R.D. at 265).

However, there can be no legitimate argument that, as suggested by the trial court in K.G., a New Jersey family court has jurisdiction to approve or deny a child's application for SIJ status. That fact is clear from a review of the SIJ statute, which implements a two-step process in which a state court makes predicate factual findings -- soundly within its traditional concern for child welfare -- relative to a juvenile's eligibility. The juvenile then presents the family court's factual findings to USCIS, "which engages in a much broader inquiry than state courts," Eddie E. v. Superior Court, 183 Cal. Rptr. 3d 773, 780 (Cal. App. Div. 2015), and makes the ultimate decision as to whether or not the juvenile's application for SIJ status should be granted. Thus, the findings made by the state court only relate to matters of child welfare, a subject traditionally left to the jurisdiction of the states. All immigration decisions remain in the hands of USCIS, the agency charged with administering the INA. Lucaj v. Dedvukai, 749 F. Supp. 2d 601, 607 (E.D. Mich. 2010) (noting that USCIS, one of three immigration-related agencies falling under Department of Homeland Security, is charged with "administer[ing] immigration benefits"). This arrangement comports with the well-established rule that the "[p]ower to

21

regulate immigration is unquestionably exclusively a federal power," De Canas v. Bica, 424 U.S. 351, 354, 96 S. Ct. 933, 936, 47 L. Ed. 2d 43, 48 (1976), a concept that has imbued our law and policy since 1889, see Chae Chan Ping v. United States, 130 U.S. 581, 604, 9 S. Ct. 623, 629, 32 L. Ed. 2d 1068, 1075 (1889) (explaining that "[t]he power[] to . . . admit subjects of other nations to citizenship [is a] sovereign power[], restricted in [its] exercise only by the Constitution itself and considerations of public policy and justice which control, more or less, the conduct of all civilized nations").

In performing its closely circumscribed task of making specified predicate factual findings, we conclude that the Family Part is required to apply New Jersey law, and not that of a foreign nation. 8 U.S.C.A. § 1101(a)(27)(J)(i) requires a petitioner to show that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis under State law[.]" (Emphasis added). As recently reiterated by the United States Supreme Court, "[i]f the statutory language is plain, we must enforce it according to its terms." King v. Burwell, __ U.S. __, __, 135 S. Ct. 2480, 2489, 192 L. Ed. 2d 483, 494 (2015). The plain language of 8 U.S.C.A. § 1101(a)(27)(J)(i) requires New Jersey courts to apply New Jersey law, and not that of an alien's home

22

country, when determining whether a juvenile has been abused, neglected, or abandoned.

Our reflection on the limited role played by the New Jersey Family Part in SIJ proceedings leads us to two additional conclusions. First, we decline petitioners' invitation to interpret the "1 or both" language of the statute. Such a task is exclusively the province of the federal government, which has provided copious guidance as to the application process and eligibility. See, e.g., USCIS, SIJ Petition Process (2011); USCIS, Eligibility Status for SIJ (2011).

We state only the following regarding the nature of the findings to be made by the Family Part. In an effort to ensure that factual findings issued by New Jersey courts provide USCIS with the necessary information to determine whether a given alien satisfies the eligibility criteria for SIJ status, we instruct courts of the Family Part to make separate findings as to abuse, neglect, and abandonment with regard to both legal parents of an alien juvenile. For example, the Family Part should first determine whether reunification with one of the child's parents is not viable due to abuse, neglect, or abandonment. Regardless of the outcome of that analysis, the court should next conduct the same analysis with regard to the child's other legal parent. By requiring the Family Part to make independent findings as to both of the juvenile's parents,

23

we ensure that USCIS will have sufficient information to apply 8 U.S.C.A. § 1101(a)(J)(27) as it sees fit when a juvenile subsequently submits the Family Part's order to USCIS in support of an application for SIJ status.  That is the role Congress envisioned for the juvenile courts of the fifty states, and that is the process that should be followed by the Family Part.

Second, we note that, throughout its decision in H.S.P., the Appellate Division expressed concern that H.S.P.'s petition for custody of M.S. was filed "'primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment.'"  H.S.P., supra, 435 N.J. Super. at 167 (citing State v. Erick M., 820 N.W.2d 639, 646 & n.25 (Neb. 2012)).  It is true that, as noted by the Appellate Division, "the legislative and administrative history of Subparagraph J shows two competing goals.  Congress wanted to permit use of the SIJ procedure when necessary to prevent the return of juveniles to unsafe parents.  Where such protection is unnecessary, however, Congress wanted to prevent misuse of the SIJ statute for immigration advantage."  Id. at 169; see In re Israel O., 182 Cal. Rptr. 3d 548, 553 (Cal. Ct. App. 2015); Erick M., supra, 820 N.W. 2d at 647.  The panel relied on that rationale in support of its decision to uphold the Family Part's determination that it was not necessary to make a best interest

finding under 8 U.S.C.A. § 1101(a)(27)(J)(ii). The panel's attempt to divine and support Congress's intent is laudable. However, New Jersey state courts are not charged with undertaking a determination of whether an immigrant's purpose in applying for SIJ status matches with Congress's intent in creating that avenue of relief. That determination is properly left to the federal government. "Nothing in 8 U.S.C.A. § 1101(a)(27)(J) or the regulation indicates that the Congress intended that state juvenile courts pre-screen potential SIJ applications for possible abuse on behalf of USCIS." In re Mario S., 954 N.Y.S. 2d 843, 851 (N.Y. Fam. Ct. 2012). As stated by USCIS,

> [j]uvenile court judges issue juvenile court orders that help determine a child's eligibility for SIJ status. A child cannot apply to USCIS for SIJ classification without a court order from a juvenile court. However, juvenile judges should note that providing a qualifying order does not grant SIJ status or a Green Card -- only USCIS can grant or deny these benefits. The role of the court is to make factual findings based on state law about the abuse, neglect, or abandonment, family reunification, and best interests of the child.
>
> [USCIS, Immigration Relief for Abused Children (2014), available at http://www.uscis.gov/sit es/default/files/USCIS/Green%20Card/Green%20 Card%20Through%20a%20Job/Immigration_Relief_ for_Abused_Children-FINAL.pdf.]

V.

25

In reviewing a decision made by a trial court in a non-jury trial, an appellate court must "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974)). Reviewing courts "should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc., supra, 65 N.J. at 484). However, legal issues are subject to de novo review; the appellate court owes no deference to legal conclusions drawn by the trial court. M.S. v. Milburn Police Dep't, 197 N.J. 236, 246 n.10 (2008).

We now turn to the specific facts of the two cases before us.

A.

In H.S.P., supra, the Appellate Division determined that M.S.'s employment did not constitute abuse or neglect because H.S.P. failed to demonstrate that his employment was contrary to the laws of India. 435 N.J. Super. at 160. We reverse that aspect of the Appellate Division judgment and remand. The

26

Family Part is obliged to determine whether M.S. cannot be reunited with either or both of his parents due to abuse, neglect, or abandonment under New Jersey law.  At that hearing, the Family Part is required to conduct an analysis of whether reunification with each of M.S.'s legal parents is viable due to abuse, neglect or abandonment, in addition to making the other required findings under 8 C.F.R. § 204.11.

B.

In K.G., the trial court determined that there was no basis under state law to find that K.G. had abused, neglected, or abandoned her daughters, K.S.G. and J.S.G.  In support of that conclusion, the court cited to the fact that K.G. remained involved in the children's lives after leaving them in their father's care to come to the United States.  She sent M.S. money for their support and remained in near-daily contact with them via telephone calls and video conference.  When M.S. died and the children fled the home they shared with his mother, K.G. arranged for the children to stay with her sister until she could arrange for them to join her in the United States.  Those facts make clear that she remained an involved parent even while living apart from her children, a conclusion supported by the fact that the children have remained in K.G.'s care since being released from the custody of Office of Refugee Resettlement.

The record is devoid of any suggestion that K.G. abused K.S.G. and J.S.G. It is equally clear that reunification with M.S., who is deceased, is not viable. Therefore, we conclude that the trial court's factual determinations were supported by competent, credible evidence. However, the trial court erred in purporting to deny K.S.G.'s and J.S.G.'s applications for SIJ status based on its conclusion that reunification with K.G. was viable. We reverse that determination and remand for a new hearing, at which the Family Part is instructed to make findings regarding each element of 8 C.F.R. § 204.11, including whether it would not be in the best interest of the juvenile alien to be returned to his or her country of origin, mindful that its sole purpose is to make the factual findings listed in that regulation and not to adjudicate the children's applications for SIJ status.

VI.

The judgment of the Appellate Division in H.S.P. is reversed and the matter remanded to the Family Part for a new hearing conducted in accordance with this decision. The judgment of the trial court in K.G. is likewise reversed and remanded.

JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA and SOLOMON join in JUDGE CUFF's opinion. CHIEF JUSTICE RABNER did not participate.

28

SUPREME COURT OF NEW JERSEY

NO. ___A-114___                    SEPTEMBER TERM 2013

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


H.S.P.,

      Plaintiff-Appellant,

         v.

J.K.,

      Defendant.


DECIDED _____August 26, 2015_____
_____Justice LaVecchia_____          PRESIDING
OPINION BY _____Judge Cuff (temporarily assigned)_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | -------------------- | -------------------- |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

SUPREME COURT OF NEW JERSEY

NO.    A-117                          SEPTEMBER TERM 2013

ON APPEAL FROM    Superior Court, Chancery Division, Union County

K.G.,

    Plaintiff-Appellant,

            v.

M.S. (DECEASED),

    Defendant.
---------------------------------------
IN THE MATTER OF J.S.G.
AND K.S.G. (MINORS)

DECIDED            August 26, 2015
              Justice LaVecchia                    PRESIDING
OPINION BY         Judge Cuff (temporarily assigned)
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | -------------------- | -------------------- |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |