# Third District Court of Appeal

## State of Florida

Opinion filed December 30, 2015.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D15-2120
Lower Tribunal No. 15-15874

————————

**In the Interest of: S.F.A.C., a minor,**
Appellant,

vs.

**Department of Children and Families,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Martin Zilber, Judge.

Claudia Del Castillo-Hronsky, for appellant.

Karla Perkins, for appellee.


Before SHEPHERD, SALTER and SCALES, JJ.

PER CURIAM.

S.F.A.C. appeals the trial court's denial of his private petition seeking an adjudication of dependency.

We are bound to follow In re B.Y.G.M., 176 So. 3d 290 (Fla. 3d DCA 2015), In re K.B.L.V., 176 So. 3d 297 (Fla. 3d DCA 2015), and In re B.R.C.M., No. 3D15-0962 (Fla. 3d DCA Dec. 30, 2015), and, therefore, affirm.

Shepherd, J., concur.

SALTER, J. (dissenting).

I respectfully dissent. I would reverse and remand this case to the trial court for an evidentiary hearing and individualized adjudication.

I.     The Amended Petition

S.F.A.C.'s verified and amended[1] "private petition" for dependency, filed on behalf of an undocumented, sixteen-year-old immigrant from Honduras, seeks an adjudication of dependency based on three separate subsections of section 39.01(15), Florida Statutes (2015), and as to each parent. The petition alleges that his parents were also born in Honduras and that they left him with an older sibling when he was nine years old. When S.F.A.C. was twelve years old, his older sibling moved out of the home and S.F.A.C. was sent to live with an aunt. S.F.A.C.'s amended petition alleges that the aunt and her husband forced him to work, mistreated him, yelled at him, limited his food, and became physically

---

[1] S.F.A.C. amended his petition shortly after it was filed to address three recently-issued appellate decisions in immigrant juvenile cases: In re B.Y.G.M., 176 So. 3d 290 (Fla. 3d DCA 2015); In re K.B.L.V., 176 So. 3d 297 (Fla. 3d DCA 2015); and O.I.C.L. v. Department of Children & Families, 169 So. 3d 1244 (Fla. 4th DCA 2015). All three of these immigrant juveniles later sought review by the Supreme Court of Florida: In re B.Y.G.M., No. SC15-2025 (Fla. filed Nov. 2, 2015); K.B.L.V. v. Florida Department of Children & Families, No. SC15-2026 (Fla. filed Nov. 2, 2015); and O.I.C.L. v. Department of Children & Families, review granted, No. SC15-1570 (Fla. Oct. 30, 2015) (oral argument set for Feb. 2, 2016). In the present case, the majority opinion is a per curiam affirmance with citations to In re B.Y.G.M., In re K.B.L.V., and our opinion (including my dissent) released today in In re B.R.C.M., No. 3D15-0962 (Fla. 3d DCA Dec. 30, 2015).

aggressive towards him. At that point, S.F.A.C. and his sister departed Honduras, travelled through Mexico, and sought to enter the United States. After two unsuccessful tries, in February 2014, S.F.A.C. crossed the border of Mexico near Hidalgo, Texas, and entered the United States.

S.F.A.C. was detained by U.S. Immigration and Customs Enforcement personnel, but was later released to the custody of his mother, then living in an apartment in Miami. He alleges that he has no one able to care for him in Honduras, that his parents abandoned him to an abusive family member in Honduras, that his father has completely abandoned him, and that neither parent has provided for his support or maintained a substantial and positive relationship with him.

The amended petition alleges that these and additional facts establish that: he has been abandoned by each of his parents (section 39.01(15)(a), Florida Statutes (2015)); he has no parent or legal custodian capable of providing adequate supervision and care for him (section 39.01(15)(e)); and he is at substantial risk of imminent abuse, abandonment, or neglect by his parent, parents, or legal custodian (section 39.01(15)(f)). The father's written consent to an adjudication of dependency regarding S.F.A.C., signed and notarized in Honduras (with a certified translation), was also attached to the petition.

## II. The Circuit Court Hearing and Order

The circuit court hearing on the petition consisted of legal argument—no evidence was presented. In this case,

unlike a number of other special immigrant juvenile petitions described in earlier appellate decisions, an attorney from the Department of Children and Families (DCF) presented argument in opposition to the amended petition. The court asked counsel for S.F.A.C. a series of questions: whether there was an imminent risk of harm to S.F.A.C., other than the threat of going back to Honduras; whether the juvenile was presently being harmed in his current placement with his mother; and whether S.F.A.C. was in need of any services. S.F.A.C.'s attorney responded "no" to each of these questions. The parties and court did not address the difference between the allegations in the amended petition as to the father, versus those addressed to the mother's acts and omissions.

The court referred to "the recent Third DCA and Fourth DCA decisions"[2] and found them indistinguishable from S.F.A.C.'s case. Though acknowledging "the plight of this young man" and other immigrant juveniles, the court denied the petition. A few days later, the court issued its written order denying the petition:

> The Petitioner acknowledges that the Mother – [S.F.A.C.'s] present custodian – is meeting the child's needs "emotionally and financially." [] The only claimed threat is that removal from the United States will result in [S.F.A.C.] being placed back in the custody of his aunt – an allegedly unfit custodian. This is legally no different than the risk of imminent neglect posted in K.B.L.V.; namely, the "threat" that absent a dependency adjudication the child would "likely face deportation to Honduras, where he will not have any immediate family member who can provide him with food and shelter." [In re K.B.L.V., 176 So. 3d 297, 299 (Fla. 3d DCA 2015)]. In this case, like in K.B.L.V., "the threat is essentially deportation." [Id. at 300].

---

[2] These are cited in the preceding footnote, including for each citation the later history.

What the K.B.L.V. and B.Y.G.M. court seem to reject is the notion that a child who is not presently at risk here in the United States may be adjudicated "dependent" in an attempt to prevent a future risk that will (or may) result from deportation; a risk of harm that will materialize – if at all – in a foreign country only after – and as a consequence of – the child's removal. Thus, if the child could not be found "dependent" absent the threat of deportation, he should not be found "dependent" at all. In other words, K.B.L.V. and B.Y.G.M. suggest that a Florida court should not be adjudicating a child "dependent" in an attempt to prevent him from later becoming "dependent" in his country of origin post deportation.

The Petitioner in this case (and several other petitioners), however, argue these alien children should be treated the same as any other child who would be at "imminent" risk of abuse or neglect if placed with an unfit parent/custodian, and that the scenario presented here is no different than a case where – hypothetically – a child in the custody of a Mother recently deceased or incapable of providing care due to illness would – absent a dependency order – be placed in the custody of an "abusive" aunt. Or say a hypothetical where the child's only parent passes and – absent a dependency adjudication – the child would have no parent or legal custodian. In both these instances Petitioner says the dependency court would "step-in" and adjudicate the child dependent to prevent "imminent" abuse or neglect, and that it should do the same in a case where – absent a dependency adjudication – an alien child will suffer the same fate. According to the Petitioner both children face the same risk; the only difference being that the risk to the alien child will result after a deportation, whereas the risk to the domestic child will result sans deportation. But the risk of being "abused" or "neglected" is the same.

As in these hypothetical scenarios it is true that absent a dependency order an alien child such as [S.F.A.C.] may be returned to an abusive family member (aunt) in his country of origin or, as was the case in K.B.L.V., be returned and have no family at all. Some question[] why these alien children should be treated differently than a domestic child who – absent an adjudication of dependency – would be placed with an "abusive" parent or have no legal custodian. The answer is that the perceived – and in some instances real – risk of future harm facing alien children results as a consequence of the federal government's deportation decision, not due to the application of state family law principles or the child's orphanage. That is

6

precisely why, as Judge Shepherd observed, "[t]hese cases are immigration cases, pure and simple." [In re B.G.Y.M., 176 So. 3d 290, 296 (Fla. 3d DCA 2015) (Shepherd, J., concurring)]. And if Congress wants to provide an avenue of immigration relief to children who – if deported – will be at "imminent" risk of "abuse" or "neglect" in their home country it is free to do so, as "[t]he authority to control immigration–to admit or exclude aliens–is vested solely in the Federal government.["] Truax v. Raich, 239 U.S. 33 (1915); Galvan v. Press, 347 U.S. 522, 531(1954) ("Policies pertaining to the entry of aliens and their right to remain here are ... entrusted exclusively to Congress").

Maybe children who face an "imminent" risk of abuse or neglect by a parent in their country of origin – or children who – if returned – would have no legal custodian – should be offered removal relief. And maybe – as a matter of immigration policy designed to deter illegal entry – these children should be returned no matter the consequence, thereby imposing on foreign authorities the responsibility of addressing the needs of "dependent" children within their borders. However, as my colleague Judge Hanzman has pointed out repeatedly in his eloquent private petition orders and in this Court's opinion that is a "policy" decision that should not be made by juvenile court judges applying the text of vastly different state dependency statutes; particularly when, as Judge Shepherd also noted, these "decisions" are nothing more than non-binding advisory opinions. [See In re K.B.L.V., 176 So. 3d at 300 (Shepherd, J., specially concurring)] ("our decisions in these cases are nothing but advisory opinions… subject to… reconsideration by the United States Department of Homeland Security.")

In any event, Petitioner's "immanency" argument needs not be taken head on here because, as the Court has already found, the facts of this particular case do not suggest that [S.F.A.C.] is at "imminent" risk of "abuse" or "neglect" if returned to his aunt's custody.

Conclusion

My colleagues and this Court have repeatedly said – and again reiterate – that it is sympathetic to the plight of these alien minors who embark upon an often treacherous journey in an effort to reach U.S. soil – become productive members of our society – and secure the opportunity of a better life. The Court also "cannot blame these illegal immigrant children [and their dedicated and charitable counsel] for exploring any lawful means of remaining in the United States

after arriving here." [In re B.Y.G.M., 176 So. 3d at 295 (Shepherd, J., concurring)]. But the Court has also made clear that its role is to honor its constitutional oath and apply the law "as it is"; not to "set immigration policy or decide whether, as a humanitarian gesture, any particular alien child should be permitted to stay in the United States." See [In re E.G.S.-H., 22 Fla. L. Weekly Supp. 693b (Fla. 11th Cir. Ct. Jan. 27, 2015)]. And a faithful and consistent application of the law – "as it is" – compels the Court to conclude that [S.F.A.C.] is not "dependent" as defined by Florida Law.

This appeal followed.

III.   Analysis

For the sake of brevity, I will rely primarily upon the lengthy analysis in my dissenting opinion issued today in an appeal by another immigrant juvenile heard at oral argument this year, In re B.R.C.M., No. 3D15-962 (Fla. 3d DCA Dec. 30, 2015). Although S.F.A.C.'s amended petition seeks an adjudication that would assist him in applying for Special Immigrant Juvenile (SIJ) status under federal immigration law,[3] that should not deter DCF from investigating, or our courts from adjudicating, each of these petitions on an individualized basis.

Other state courts have addressed the issues in such "private petition" or SIJ cases, and have developed a practical approach to adjudicating them. The Supreme Court of New Jersey's recent and comprehensive decision in H.S.P. v. J.K., 121 A.3d 849 (N.J. 2015), includes citations to decisions in other such cases by the appellate courts of other states. H.S.P. also provides an appropriate procedure for individualized adjudication in state SIJ cases such as this one. In my view, H.S.P. correctly concludes that specific written findings as to each parent

_____
[3] 8 U.S.C. § 1101(a)(27)(J); see also § 39.5075, Fla. Stat. (2015).

8

and each legal claim are important for the subsequent evaluation of an immigrant juvenile's ability to obtain federal relief.[4]  Detailed findings will also permit meaningful appellate review in our state appellate courts.

Unless our Florida courts follow the procedure detailed in H.S.P. (or something substantially similar), we are approaching a categorical, summary denial of all juvenile immigrant petitions—apparently because they are felt to involve federal immigration issues rather than our traditional domestic dependency claims—followed by the categorical and summary affirmance of those circuit court denial orders on appellate review.  We cannot lose sight of the fact that each immigrant juvenile petitioner is a child inside our state borders, that he or she may have scars that go unseen, and that each such petitioner is equal to other Florida children under the law.

For these reasons (and those set forth in my dissenting opinion in In re B.R.C.M.), I respectfully dissent.  I would reverse the order summarily denying S.F.A.C.'s amended petition for dependency.  I would remand the case for further proceedings, including the presentation or proffer of testimony, and for the entry of specific adjudicatory findings on each claim (and separately as to each of S.F.A.C.'s parents).

---

[4] As made clear in several of our decisions, any finding of dependency a Florida court may make does not automatically confer any special federal immigration status upon a petitioning juvenile.  Our adjudication of dependency under Florida law must be followed by an application to federal immigration authorities—and that application for federal SIJ status may or may not be granted.