NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0334-14T1

O.Y.P.C.,

    Petitioner-Appellant,

v.

J.C.P.,

    Respondent-Respondent.

APPROVED FOR PUBLICATION

November 2, 2015

APPELLATE DIVISION

Submitted October 14, 2015 — Decided November 2, 2015

Before Judges Reisner, Hoffman and Leone.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, FD-02-504-14.

Cesar Martin Estela, attorney for appellant.

Respondent J.C.P. has not filed a brief.[1]

The opinion of the court was delivered by

REISNER, P.J.A.D.

Petitioner O.Y.P.C. appeals from a July 30, 2014 order of the Family Part denying reconsideration of a December 20, 2013 order denying her immigration-related petition for custody of

---

[1] In the trial court, petitioner filed proof of service on J.C.P. However, J.C.P. did not appear in the action.

her brother, E.A.C.P., who had just turned eighteen.[2] Filing such an application is a necessary first step in the process of seeking special immigrant juvenile (SIJ) status from the federal government, under the auspices of the Immigration Act of 1990, as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Pub. L. No. 110-457, 122 Stat. 5044 (2008).[3]

In pertinent part, the statute provides that SIJ status can be granted to an alien present in the United States

> who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[.]
>
> [8 U.S.C.A. § 1101(a)(27)(J)(i).]

---

[2] Although the notice of appeal only listed the July 2014 order, petitioner's brief addressed the merits of the December 2013 order as well. In the interests of justice we will consider both orders. It is clear that both orders must be reversed to comply with recent Supreme Court precedent.

[3] For clarity we refer to these applications as SIJ petitions.

Federal implementing regulations provide that an alien is eligible for SIJ classification if the alien is "under twenty-one years of age." 8 C.F.R. § 204.11(c)(1).[4]

According to petitioner's Family Part filing, the brother was born in Guatemala. His father's name is not on his birth certificate and the father has had no involvement in his life. The boy's biological mother, J.C.P., concealed his parentage from the child, and at his birth she handed him over to petitioner, his then seventeen-year-old sister. Petitioner, at seventeen, was expected to raise the child as her own, as well as support both the child and the mother. The mother pretended to be the boy's grandmother and provided him with no support.

According to petitioner's filing, she eventually moved to the United States, entering without legal documentation, in order to support her brother and her mother financially. She left the brother with the "grandmother." While in Guatemala, the boy was menaced by local gang members but the grandmother did nothing to protect him, telling him that was just how life

---

[4] The regulations also require that the juvenile "has been deemed eligible by the juvenile court for long-term foster care." 8 C.F.R. § 204.11(c)(4). However, "the TVPRA liberalized the requirements for SIJ status by eliminating the requirement that the child be eligible for long-term foster care." H.S.P., supra, slip op. at 16. Thus, we view the regulations in light of the TVPRA's amendment of the statute. H.S.P. v. J.K., 435 N.J. Super. 147, 154-55 n.2 (App. Div. 2014), rev'd on other grounds, __ N.J. __ (2015).

was in Guatemala.  Fearing for her brother's safety and well-being, petitioner revealed to him that she was his sister, and arranged for him to travel to the United States, where he lived with her and enrolled in the local high school.  The boy, who speaks limited English, was still in high school when the petition was filed, and he was completely dependent on petitioner, financially and otherwise.

The TVPRA, as interpreted by the federal agency responsible for its implementation, applies to "juveniles" under age twenty-one.  See 8 U.S.C.A. § 1101(a)(27)(J); 8 C.F.R. 204.11(c)(1).  However, the trial court declined to entertain the SIJ petition because the brother had just turned age eighteen.  Relying on the definition of "juvenile" found in the Code of Juvenile Justice, N.J.S.A. 2A:4A-22(a), the court reasoned that under New Jersey law the brother was no longer subject to the jurisdiction of the Family Part.

After the trial court rendered its decision, our Supreme Court decided H.S.P. v. J.K., ___ N.J. ___ (2015), which clarified the Family Part's obligations in deciding SIJ petitions.  H.S.P. explained the unusual and important role that these state court petitions play in the federal immigration scheme.  The Court also made clear that Family Part judges hearing these cases have no obligation to apply or interpret

federal immigration law, but they _are_ obligated to make the factual findings set forth in the federal SIJ regulations.

The opinion summarizes those concepts as follows:

> The Family Part plays a critical role in a minor immigrant's attempt to obtain SIJ status but that role is closely circumscribed. The Family Part's sole task is to apply New Jersey law in order to make the child welfare findings required by 8 C.F.R. § 204.11. The Family Part does not have jurisdiction to grant or deny applications for immigration relief. That responsibility remains squarely in the hands of the federal government. Nor does it have the jurisdiction to interpret federal immigration statutes. The Family Part's role in the SIJ process is solely to apply its expertise in family and child welfare matters to the issues raised in 8 C.F.R. § 204.11, regardless of its view as to the position likely to be taken by the federal agency or whether the minor has met the requirements for SIJ status. To that end, Family Part courts faced with a request for an SIJ predicate order should make factual findings with regard to each of the requirements listed in 8 C.F.R. § 204.11. When analyzing whether reunification with "1 or both" parents is not viable due to abuse, neglect, or abandonment, the Family Part shall make separate findings as to each parent, and that determination shall be made by applying the law of this state. This approach will provide USCIS with sufficient information to enable it to determine whether SIJ status should be granted or denied, in accordance with the statutory interpretation of the SIJ provision applied by that agency.
>
> [H.S.P., _supra_, ___ N.J. at ___ (slip op. at 3-4).]

The Court recognized that "[t]he process for obtaining SIJ status is 'a unique hybrid procedure that directs the collaboration of state and federal systems.'" Id. at 17 (citations omitted). Later in the opinion, the Court referred to "the role Congress envisioned for the juvenile courts of the fifty states." Id. at 24. Informed by the Court's guidance, we conclude that it would defeat the purpose of the hybrid federal-state scheme Congress created if state family courts decline to hear these cases solely because a juvenile is over the age of eighteen, so long as the juvenile is still under the age of twenty-one.

Significantly, the Court provided that the Family Part "must make the following findings," based on the federal statute and the regulations as modified by the TVPRA, namely whether:

> (1) The juvenile is under the age of 21 and is unmarried;
>
> (2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court;
>
> (3) The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles;
>
> (4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; and

> (5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence[.]
>
> [H.S.P., supra, __ N.J. at __ (slip op. at 18) (quoting In re Dany G., __ A.3d __, __ (Md. Ct. Spec. App. 2015)).]

Thus, we understand H.S.P. as requiring Family Part judges hearing these cases to make all of the federally-required findings, regardless of whether they believe that the juvenile should be declared dependent on the court or placed under the custody of an entity or individual.[5] Because the brother was under the age of twenty-one, the trial court should have made the federally-required SIJ findings. Accordingly, H.S.P. requires that we remand the case so that the trial court can hear the applicant's evidence concerning the pertinent SIJ issues, and make the required SIJ findings.

In deciding the petition, the trial court should address any state-law based relief petitioner seeks. When making that

---

[5] For example, if the trial judge believes that, under New Jersey law, the court cannot declare the juvenile "dependent on the court" or place the juvenile "under the custody of an entity or individual" solely because the juvenile is over the age of eighteen, the court should state that conclusion. However, the court must still proceed to make all the other SIJ-required findings, using the same standards the court would use if the child were under eighteen. It will be up to the federal authorities hearing the juvenile's federal SIJ application to determine the significance of the state court's state-law legal conclusions and factual findings. See H.S.P., supra, __ N.J. at __ (slip op. at 21).

determination, the court should apply New Jersey law as it would in any other case of that type. For example, if on remand petitioner pursues custody of her younger brother, the trial court should apply New Jersey law to that application, as though it were an ordinary custody case.

We make the following observations for the trial court's guidance. As the Court held in H.S.P., the SIJ evidence must be viewed through the lens of New Jersey law, not the law of the juvenile's country of origin. For example, in H.S.P., the petition included evidence that, while living in India, the juvenile went to work at age fifteen in a construction job that was dangerous to his health. The Court held it was error to view those facts in light of Indian child labor laws, but rather, the trial court should have applied New Jersey law concerning child abuse and neglect. H.S.P., supra, ___ N.J. at ___ (slip op. at 26-27).

The trial court should not concern itself with whether the applicant filed the petition primarily to obtain legal immigration status for the juvenile, or whether the federal immigration authorities should or should not grant SIJ status. "New Jersey state courts are not charged with undertaking a determination of whether an immigrant's purpose in applying for SIJ status matches with Congress's intent in creating that

avenue of relief.  That determination is properly left to the federal government."  H.S.P., supra, ___ N.J. at ___ (slip op. at 25).  The state court's role in the SIJ process "is to make factual findings based on state law about the abuse, neglect, or abandonment, family reunification, and best interests of the child."  H.S.P., supra, ___ N.J. at ___ (slip op. at 25) (quoting USCIS, Immigration Relief for Abused Children (2014), available at http://www.uscis.gov/sites/default/files/USCIS/Green%20Card/Green%20Card%20Through%20a%20Job/Immigration_Relief _for_Abused_Children-FINAL.pdf).

Finally, in determining any request for custody or dependency petitioner may make, the court must determine if there is a basis for custody or dependency under New Jersey law. Generally, New Jersey statutes provide for the granting of custody for juveniles under eighteen years old.  See N.J. Div. of Youth and Family Servs. v. W.F., 434 N.J. Super. 288, 295-96 (App. Div.), certif. denied, 218 N.J. 275 (2014).  However, we note that the Family Part does have some sources of jurisdiction over persons between the ages of eighteen and twenty-one.

For example, "the Resource Family Parent Licensing Act authorizes DYFS to place an individual between eighteen and twenty-one years of age in a resource family home, a group home, or another institution, when that individual is 'enrolled in a

school or training program below college level.'" State ex rel. J.S., 202 N.J. 465, 479 (2010) (citing N.J.S.A. 30:4C-26(a)); see N.J.S.A. 30:4C-27.5. The Age of Majority Act contains an exception for "persons between 18 and 21 years of age who seek to avail themselves of such services and who are enrolled in a school or training program below college level." N.J.S.A. 9:17B-3. See also N.J.S.A. 9:17B-2(f) (declaring that the Legislature did not intend to "[a]lter the provision of services pursuant to the laws relating to dependent and neglected children [under N.J.S.A. 30:4C-1 to -44] to persons between 18 and 21 years of age who seek to avail themselves of such services and who are enrolled in a school . . . below college level").

The same statute excepts from its definition of adulthood-at-age-eighteen "the right of a court to take any action it deems appropriate and in the interest of a person under 21 years of age." N.J.S.A. 9:17B-3. Additionally, under Title 9, a "placement may be made or continued [emphasis added]" under N.J.S.A. 9:6-8.54 "beyond the child's eighteenth birthday" with the child's consent. N.J.S.A. 9:6-8.54(c). See also N.J.S.A. 30:4C-11 (detailing the procedures for an application for care and custody); N.J.S.A. 3B:12A-4(a)(6) (addressing kinship legal

guardianship of a juvenile over eighteen who is enrolled in high school).[6]

However, we need not address the issue further in this opinion. As previously noted, if petitioner seeks custody of her brother pursuant to state law, the court shall apply New Jersey law in adjudicating that application. Due to the passage of time since the petition was filed, petitioner should be permitted to promptly update her application on remand should she choose to do so.

We reverse the orders dated December 20, 2013 and July 30, 2014, and we remand the case to the Family Part for further proceedings consistent with this opinion. Because the SIJ portion of the petition is time sensitive, petitioner's application must be heard and the requisite findings must be issued within ninety days of the date of this opinion. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] The trial court's reliance on the definition of "juvenile" in the Code of Juvenile Justice, N.J.S.A. 2A:4A-22(a), was inapposite, because juvenile delinquency is not at issue here.

A-0334-14T1