**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4440-16T2

W.R.A.H.,

    Plaintiff-Appellant,

v.

D.M.A.H.,

    Defendant-Respondent.

_____

Submitted January 22, 2018 — Decided July 9, 2018

Before Judges Whipple and Rose.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Mercer County,
Docket No. FD-11-0866-16.

Cesar Martin Estela, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

    Appellant W.R.A.H. (Wyatt)[1] appeals the trial court's May 3, 2017 amended order, finding that L.E.A.H. (Luke) could viably be

_____

[1]  For ease of reference and to protect the identities of the parties, we refer to the parties by pseudonyms.

reunified with his mother, respondent D.M.A.H. (Diane). Following our review of the record and applicable legal principles, we reverse and remand for further proceedings.

We discern the following facts from the record. Luke was born on August 14, 1996, to Diane, who resides in Guatemala. Luke's father is unknown and is not named on his birth certificate. Wyatt, Luke's uncle, has raised and provided care for him since May 2014, when Luke entered the United States. Luke currently attends Mercer County Community College, pursuing a GED and aspiring to be an auto mechanic.

Throughout his adolescence, Diane attempted to shield Luke from gang violence in Guatemala. After Luke refused to join a local gang, its members began to harass and threaten him. Luke changed schools multiple times and eventually began working in the mountains to avoid the gang. Unfortunately, the harassment persisted, and the gang gave Luke an ultimatum, requiring him to join by May 8, 2014. Fearing the consequences of refusing and knowing she could no longer protect Luke, Diane allowed him to flee Guatemala to live with his uncle, Wyatt, in New Jersey. Wyatt paid "some coyotes" who helped Luke get to the United States on a trip that took two months. When Luke arrived in the United States, he was held in a Texas detention center for minors for about two

weeks. He was then released to Wyatt in New Jersey, where he remains today.

On January 30, 2017, Wyatt filed a petition for sole legal custody of Luke and for special factual findings for Special Immigrant Juvenile (SIJ) status. On March 15, 2017, the Family Part judge ruled the court did not have jurisdiction under N.J.S.A. 9:17B-3 to grant Wyatt custody of Luke because Luke was over eighteen. The judge declined to make any findings of abuse, neglect, or abandonment against Diane because "under the circumstances she did the best she could to avert the gang violence . . . and when that wasn't enough she acceded to him coming to the United States and consented to him being under the care of his uncle." The judge also determined Luke could not be reunited with his mother because of gang violence and it was not in his best interest to return to Guatemala.

Wyatt thereafter moved for reconsideration. On May 3, 2017, the Family Part judge reconsidered and determined N.J.S.A. 9:17B-3 permitted "the court to take any action it deems appropriate and in the interest of a person under 21 years of age." Additionally, "under Title 9, a placement may be made or continued . . . under N.J.S.A. 9:6-8.54 beyond the child's eighteenth birthday with the child's consent." O.Y.P.C. v. J.C.P., 442 N.J. Super. 635, 643 (App. Div. 2015) (citing N.J.S.A. 9:6-8.54(c)).

The court then made the required finding whether "reunification with one or both of [Luke's] parents is not viable due to abuse, neglect, or abandonment or similar basis under state law." The court found reunification with Diane was viable and concluded she did not abuse, neglect, or abandon Luke. Despite her best efforts, Diane was unable to protect Luke in Guatemala and sent him to live with Wyatt for protection. Additionally, the court determined Luke's father abandoned him and reunification was not viable. Lastly, it concluded it was not in Luke's best interest to return to Guatemala because of the continued gang threats.

On appeal, Wyatt argues the Family Part judge erred finding it was viable for Luke to return to his mother. Wyatt asserts Luke was abandoned or neglected because Diane had not emotionally or financially supported him since he left Guatemala. He further contends that, while in Guatemala, Diane could not secure his safety, and Luke was forced to stop attending school. Wyatt asks us to reverse the decision of the Family Part and determine that Diane abandoned her son so that he may perfect his petition for Luke to be granted SIJ status.

"SIJ status is a form of immigration relief permitting alien children to obtain lawful permanent residency and, eventually, citizenship." H.S.P. v. J.K., 223 N.J. 196, 200 (2015). An alien

child may apply for SIJ status under the Immigration and Nationality Act of 1990, as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044. Id. at 199-200. "The process for obtaining SIJ status is 'a unique hybrid procedure that directs the collaboration of state and federal systems.'" Id. at 209 (quoting In re Marisol N.H., 979 N.Y.S.2d 643 (N.Y. App. Div. 2014)). A two-step process is required to obtain such status. Id. at 200. First, the juvenile, or someone acting on his or her behalf, must petition the Family Part for an order finding the juvenile satisfies the following SIJ criteria:

> (1) The juvenile is under the age of 21 and is unmarried;
>
> (2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court;
>
> (3) The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles;
>
> (4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; and
>
> (5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence within the meaning of 8 U.S.C.[ ] § 1101(a)(27)(J)(ii); 8 C.F.R. § 204.11(a), (d)(2)(iii).

[<u>Id.</u> at 210 (citation omitted).]

In making these findings, the Family Part "is not rendering an immigration determination." <u>Ibid.</u> (citations omitted). Rather, the findings serve as a prerequisite that enables the juvenile to submit his or her application for SIJ status to the United States Citizenship and Immigration Services (USCIS). <u>Ibid.</u> If the USCIS approves the application, the juvenile will then be granted SIJ status. <u>Ibid.</u> (citations omitted). Thereafter, the juvenile is permitted to seek lawful permanent residency, and eventually citizenship. <u>Id.</u> at 200.

Our Supreme Court emphasized "[t]he Family Part's sole task is to apply New Jersey law in order to make the child welfare findings required by 8 C.F.R. § 204.11." <u>Id.</u> at 200. In performing this function, the Family Part must apply its expertise "regardless of its view as to the position likely to be taken by the federal agency or whether the minor has met the requirements for SIJ status." <u>Id.</u> at 200-01. When addressing these factors, the law of the State must be applied. <u>Id.</u> at 212-13 (citing 8 U.S.C. § 1101(a)(27)(J)(i)). "[T]he SIJ evidence must be viewed through the lens of New Jersey law, not the law of the juvenile's country of origin." <u>O.Y.P.C.</u>, 442 N.J. Super. at 641.

In reviewing the Family Part's determinations, we "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974)). We "should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, 65 N.J. at 484). However, we owe no deference to legal conclusions drawn by the trial court. Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995) (citations omitted).

We disagree with the Family Part's legal conclusion that Diane did not abuse, neglect, or abandon Luke under the lens of New Jersey law. A child is abused or neglected under N.J.S.A. 9:6-8.21(c)(4)(a) if: "(1) the child's physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired; and (2) the impairment or imminent impairment results from the parent's failure to exercise a minimum degree of care." N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017). In G.S. v. Department of Human Services, the Supreme Court found "a guardian fails to exercise a minimum degree

of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." 157 N.J. 161, 181 (1999). In determining whether a parent did not exercise a minimum degree of care, a judge must also "account for the surrounding circumstances" because "[a]buse and neglect cases are fact-sensitive." Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 180 (2015) (citations omitted).

The testimony adduced at trial illustrates how, after multiple attempts to protect Luke, Diane deliberately allowed him to flee Guatemala unaccompanied for a two month trek north. Under N.J.S.A. 9:6-1, abandonment consist of a parent "willfully forsaking a child." The statute further directs that a parent abandons a child by "failing to care for and keep the control and custody of a child so that the child shall be exposed to physical or moral risk without proper and sufficient protection." Ibid. Undeniably, under New Jersey law, a parent could be considered to have neglected or abandoned a child if he or she voluntarily allowed the child to freely travel for thousands of miles unsupervised, even if the parent did so for the benefit of the child's well-being. In Lavigne v. Children's Society, the Supreme Court explained:

> [t]he statutory notion of abandonment does not necessarily, we think, imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.
>
> [11 N.J. 473, 480 (1953) (citation omitted).]

Even though Diane may have had Luke's best interest in mind, the questions of neglect and abandonment require further discussion under New Jersey law. Diane directed Luke to flee Guatemala on his own and exposed him to considerable perils potentially visited upon an unaccompanied minor to the United States from Central America. Moreover, Diane's actions may demonstrate a clear intention to forego her parental responsibilities and place Luke's welfare entirely in the hands of his uncle. In addition, the Family Part judge's conclusion Luke could be reunited with Diane is not supported by evidence in the record. In particular, the court does not explain how Luke might be reunited with Diane if it is too dangerous for him to return to Guatemala.

Accordingly, we reverse and remand with instruction to the Family Part to determine whether Diane abandoned or neglected Luke under New Jersey law, decide the application for custody of Luke, and make all of the requisite 8 C.F.R. § 204.11(c) findings. The

A-4440-16T2

court shall make its findings based on the evidence adduced at the March 15, 2017 hearing and shall set forth the findings in a written decision within forty-five days. Wyatt shall have fifteen days from the day he receives the court's written decision to file a supplemental brief with this court if deemed necessary, which shall not exceed ten pages.

Reversed and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION