RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2877-19T1

H.V.D.M.,

      Plaintiff-Appellant,

v.

R.W.,

      Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**
**February 1, 2021**
**APPELLATE DIVISION**

Submitted December 9, 2020 – Decided February 1, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-0727-20.

Law Office of Eric M. Mark, attorney for appellant (Marisol Conde-Hernandez, on the brief).

R.W., respondent, has not filed a brief.

The opinion of the court was delivered by

WHIPPLE, J.A.D.

In this appeal we address the predicate state court findings necessary for a federal petition for Special Immigrant Juvenile Status (SIJS).  Specifically, a state court must analyze the five prongs of the federal regulations set forth in 8

C.F.R. § 204.11(c) (2020) under state law before an applicant can file a petition to the United States Citizenship and Immigration Services (USCIS) for SIJS. The trial court concluded that a child, Daria,[1] was not dependent on the New Jersey courts due to the existence of a Canadian custody order that awarded custody to plaintiff, her paternal grandmother, H.V.D.M. (Helen). We conclude that the trial court erred when it held that Daria was not dependent on the New Jersey courts and dismissed the complaint. We reverse and remand for further findings consistent with the instructions below.

We discern the following facts from the record. In March 2012, Daria was born in Toronto, Canada, to mother R.W. (Rita) and father David. Rita and David are both Canadian citizens and residents. Remy is Daria's half-sister, Rita's daughter by a different father, and is also a Canadian resident. In April 2012, the Children's Aid Society of Toronto (CAST) became involved with the family due to allegations that Rita abused Remy. As a result, CAST provided parenting services to the family.

In June 2013, Remy reported that Rita had recently abused both her and Daria. Also, Remy stated that David hit her. In response, CAST removed both

---

[1] We use pseudonyms for ease of reference due to the similarities of some family initials. We utilize the protections of Rule 1:38-3(c)(9) due to the confidential nature of child custody records.

Daria and Remy from the home. From June 2013 through February 2015, Daria spent time in foster care, with her father, and with two maternal aunts.

On October 14, 2014, a psychiatrist submitted a report to CAST in which he concluded it was "extremely likely" that David suffered from pedophilia. Subsequently, David refused to cooperate with CAST. On February 18, 2015, the Ontario Court of Justice (Canadian court) issued an order allowing Daria's reunification with Rita subject to supervision and on certain conditions, including the requirement that Rita prohibit David access to Daria.

In August 2015, the Canadian court terminated the supervision aspect of the February 18, 2015, order; however, on May 23, 2016, a CAST caseworker reported that Rita allowed David to return to her home despite the court order prohibiting his access to Daria. The caseworker further reported that CAST was unable to trust that Rita would comply with any orders aimed at keeping her children safe.

On October 11, 2017, the Canadian court ordered Daria's placement with Helen, a resident of New Jersey. The Canadian court's order permits Helen to obtain government documents and consult with Daria's doctors and school professionals, all without the consent or signature of Daria's parents. The order further allows Helen to travel with Daria between Canada and the United States for any period of time without the consent of Daria's parents. Helen, or

a person of her choosing, must supervise parenting time between Rita and Daria. Helen must also supervise parenting time between David and Daria.[2] Nevertheless, the Canadian order does not terminate Rita's or David's parental rights. The order specified that parenting time would be at Helen's discretion as to "location, duration, frequency, or time." The order also allows Daria to have weekly telephone calls and twice-yearly physical visitation with Remy. Daria resides with Helen and her husband in New Jersey and attends private school in New York.

On August 14, 2019, Helen filed a verified complaint in New Jersey seeking sole custody of Daria for the purposes of caring for the child and allowing plaintiff, on behalf of Daria, to petition the federal government for SIJS. In Helen's certification she explains that she cannot enroll Daria on her health insurance because of Daria's immigration status.[3]

On September 26, 2019, the court held oral argument as to the issue of custody and the SIJS analysis. Counsel represented Helen, and Rita appeared by telephone and was represented by Canadian counsel. David did not appear.

---

[2] Helen's certification stated that the Canadian litigation involved an allegation that David sexually molested Remy.

[3] Trial counsel clarified at the hearing that Daria's authorized stay in the United States had expired. In addition, Helen was unable to facilitate travel to Canada with Daria due to the child's lack of settled immigration status.

As to the issue of custody, the court recognized and registered the Canadian order in New Jersey pursuant to the New Jersey Uniform Child Custody Jurisdiction and Enforcement Act (NJUCCJEA), N.J.S.A. 2A:34-79, explaining that its recognition of the order in New Jersey allowed plaintiff to have all of the same rights granted under the Canadian order. The court further explained that it was unable to modify the Canadian order, which it acknowledged Helen was not seeking.

As to the issue of the SIJS petition, the court concluded that it had jurisdiction and briefly discussed the five prongs of the federal regulations set forth in 8 C.F.R. § 204.11(c) (2020) under state law regarding the predicate findings as to neglect, abuse, and abandonment. However, Rita requested a hearing on those findings in her presence. The court adjourned the determination as to whether Daria was neglected, abused, or abandoned by her parents, so Rita and David would have time to travel to the United States for the hearing.

On December 11, 2019, the court held a hearing at which Helen, Rita, and David appeared. Rita and David appeared pro se. The court heard testimony from Rita, David, and Helen. The court declined to modify the Canadian order and concluded that Canada retained jurisdiction over Daria. For the purposes of the SIJS analysis, the court explained that the first, second,

5

third, and fifth prongs were satisfied. Under the first prong, there was no dispute that Daria was under twenty-one and unmarried. Second, the court stated that Daria was dependent on the Canadian court to be placed in Helen's custody, and that registration of the Canadian order met the criteria of prong two. Third, the court found it had jurisdiction under state law to make determinations about the custody and care of the juvenile. Under the fifth prong, the court stated that it is not in Daria's best interest to be returned to Canada, because she would likely be placed in the foster care system there. The court reserved on its ultimate determination as to whether the fourth prong—reunification with one or both parents being unviable due to abuse, neglect, or abandonment—was satisfied.

On February 4, 2020, the court issued an order dismissing plaintiff's complaint seeking custody, finding that it lacked subject matter jurisdiction to award plaintiff sole custody or modification jurisdiction to alter the Canadian order. However, it recognized that the Canadian order remained registered for enforcement purposes. The court analyzed the five factors pertaining to SIJS and relied on O.Y.P.C. v. J.C.P., 442 N.J. Super. 635, 640-41 (App. Div. 2015) when it concluded that it must make the required SIJS findings. In particular, the court changed its prior conclusion and held that Daria was not dependent on the New Jersey courts under its discussion of prong two. As to prong four,

A-2877-19T1

the court found that Daria's reunification with David was "not viable" due to "abuse, neglect, abandonment, or some similar basis under state law." The court also stated that although it was unlikely Daria would be reunified with Rita, it could not conclude that reunification with Rita was "not viable."

Helen appealed. Helen contends that the court erred in its SIJS analysis when it concluded that Daria is not dependent on the New Jersey courts. She asserts that recognition and registration of the Canadian custody order renders Daria dependent on the New Jersey courts for enforcement under the NJUCCJEA. Further, Helen asserts the court erred when it stated that to meet eligibility for SIJS, a juvenile must be both dependent on the New Jersey court and placed under an agency or individual appointed by the same court. We agree.

Federal law defines a "special immigrant juvenile" as a juvenile:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[.]

> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or

A-2877-19T1

parent's previous country of nationality or country of last habitual residence[.]

[H.S.P. v. J.K., 223 N.J. 196, 209 (2015) (second and third alterations in original) (quoting 8 U.S.C. § 1101(a)(27)(J)).]

SIJS allows alien children to obtain lawful permanent residency and, eventually, citizenship. Id. at 200. There is a two-step process to obtain SIJS: first, a juvenile must apply to a state court for a predicate finding that he or she meets the statutory requirements; and second, he or she must submit a petition to the federal government that demonstrates statutory eligibility. Ibid.

The state court's predicate findings are set forth in 8 C.F.R. § 204.11(c) (2020).[4] Ibid. Specifically, the regulation requires that the state court determine:

> (1) [t]he juvenile is under age [twenty-one] and is unmarried;

---

[4] Although not controlling precedent, recently one federal court held that 8 C.F.R. § 204.11 (2020) is invalid. In Arreaga-Velasquez v. Cuccinelli, 444 F. Supp. 3d 678, 687-92 (D.S.C. 2020), the United States District Court for the District of South Carolina concluded that Congress's intent as to who may qualify for SIJS was not adequately reflected in the current federal regulations. Ibid.

Additionally, although several federal courts have held that certain sections of 8 U.S.C. § 1101 are unconstitutional, the provision at issue in this appeal has not been ruled unconstitutional. See, e.g., Singh v. Barr, 939 F.3d 457, 464 (2d Cir. 2019) (holding that 8 U.S.C. § 1101 (a)(43)(F) is unconstitutional); Tineo v. Att'y Gen. U.S. of Am., 937 F.3d 200, 204 (3d Cir. 2019) (holding that 8 U.S.C. § 1101(c)(1) is unconstitutional as applied).

(2) [t]he juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court;

(3) [t]he "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles;

(4) [t]hat reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under state law; and

(5) [i]t is not in the "best interest" of the juvenile to be returned to his parents' previous county of nationality or country of last habitual residence within the meaning of 8 U.S.C. § 1101(a)(27) (J)(ii); 8 C.F.R. § 204.11(a)(d)(2)(iii) [amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008].

[Id. at 210.][5]

Our Supreme Court in H.S.P. stated that "Congress chose to rely on state courts to make [initial factual findings] because of their special expertise in making determinations as to abuse and neglect issues, evaluating the best interest factors, and ensuring safe and appropriate custodial arrangements." Id. at 211. As a result, the state court's sole task "is to apply New Jersey law in

---

[5]  The original text of 8 C.F.R. § 204.11(c) (2020) contains seven prongs. However, the H.S.P. Court combined several of the prongs to create a five-prong analysis. H.S.P., 223 N.J. at 210. We refer to the five-prong test consistent with the H.S.P. Court's opinion and provide citations to 8 C.F.R. § 204.11(c) (2020) where necessary.

order to make the child welfare findings" required by the federal regulations. Id. at 200. Namely, the state court must determine "whether it is in the juvenile's best interests to return to his or her home country." Ibid. The court does not have jurisdiction to grant or deny an application for immigration relief. Ibid.

Further, it "does not have the jurisdiction to interpret federal immigration statutes." Ibid. It must apply its expertise in family matters "regardless of its view as to the position likely to be taken by the federal agency or whether the minor has met the requirements for [SIJS]." Ibid. Critically, the state court must make factual findings that "provide USCIS with the necessary information to determine whether a given alien satisfies the eligibility criteria for [SIJS] . . . ." Id. at 213.

When we review a decision made by a court in a non-jury trial matter, we must "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." H.S.P., 223 N.J. at 215 (quoting Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974))). We do not disturb the findings of fact and conclusions of law of the trial court unless those findings and conclusions were "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably

credible evidence as to offend the interests of justice." <u>Rova Farms Resort Inc.</u>, 65 N.J. at 484.  Issues of law are reviewed do novo. <u>M.S. v. Millburn Police Dep't</u>, 197 N.J. 236, 246 n.10 (2008).

Prong two of the SIJS analysis pertains to whether a juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court. <u>H.S.P.</u>, 223 N.J. at 210 (referring to 8 C.F.R. § 204.11(c)(3) (2020); 8 U.S.C. § 1101(a)(27)(J)).

During oral argument on September 26, 2019, the court explained that the second prong of the SIJS analysis was satisfied because it had jurisdiction over Daria by virtue of its recognition of the Canadian order, but not for the purpose of modifying the order.  However, on February 4, 2020, despite recognizing that the Canadian order remained registered for enforcement purposes, the court changed its prior conclusion and found Daria was not "dependent on <u>this</u> court and has not been placed in the custody of an agency or individual appointed by <u>this</u> court."  Rather, the court determined that Daria was dependent on the Canadian court.  We disagree.

New Jersey's adoption of the NJUCCJEA created a full-throated obligation on our courts to not only recognize, but also enforce foreign orders.[6]

---

[6] Pursuant to N.J.S.A. 2A:34-57, pertaining to the international application of the NJUCCJEA, a foreign country is the equivalent of a U.S. state. <u>Sajjad v.</u>

In that vein, the trial court's recognition of the Canadian order causes Daria to be dependent on New Jersey courts for enforcement.

As a threshold matter, the Senate Judiciary Committee's statement at the outset of the NJUCCJEA sets forth the Legislature's intention for our courts to both recognize and enforce foreign orders. N.J.S.A. 2A:34-53. Also, pursuant to N.J.S.A. 2A:34-87, New Jersey "shall accord full faith and credit" to the foreign order. Thus, the trial court was required to recognize the Canadian order, which it did.

However, the trial court did not fully appreciate that (1) pursuant to N.J.S.A. 2A:34-77(a), it must also enforce the Canadian order; and (2) pursuant to N.J.S.A. 2A:34-77(b), it has the power to use any enforcement remedies available under state law to aid in the enforcement of the order. Specifically, N.J.S.A. 2A:34-77(a) states that "[a] court of this State shall recognize and enforce a child custody determination of a court of another state . . . ." Further, N.J.S.A. 2A:34-77(b) states that "[a] court of this State may utilize any remedy available under other law of this State to enforce a child custody determination made by a court of another state." This language is echoed in N.J.S.A. 2A:34-80(b), which again states that New Jersey "shall

---

(continued)

Cheema, 428 N.J. Super. 160, 171 (App. Div. 2012) (explaining that the NJUCCJEA treats a foreign country as if it were a state of the United States).

recognize and enforce," but not modify a foreign order. Similarly, N.J.S.A. 2A:34-80(a) states that a New Jersey court "may grant any relief normally available under the law of [New Jersey] to enforce a registered child custody determination made by a court of another state." Thus, based on the language of the NJUCCJEA, Daria is dependent on New Jersey's courts for enforcement of the Canadian order and has available to her any New Jersey relief to enforce the Canadian order.

In New Jersey, enforcement actions may proceed through Rule 1:10-3, pertaining to motions for relief to litigant's rights and, also, Rule 5:3-7, setting forth additional remedies available to persons appearing in family court. Although some listed relief in Rule 5:3-7 pertains to modification of custody, which would not be available to a New Jersey court in the present case, Rule 5:3-7 also sets forth enforcement relief such as compelling action, awarding sanctions, ordering incarceration, and other appropriate equitable remedies. Therefore, Daria is dependent on our courts through the availability of and allowable use of the remedies set forth in these court rules.

The Canadian order states that Helen, or a person of her choosing, must supervise visitation between Rita and Daria. Moreover, pursuant to the Canadian order, Helen sets the "location, duration, frequency, or time" of the parenting time. Should Helen elect to conduct parenting time in New Jersey,

which is allowed by the Canadian order and, should Rita fail to attend, then the New Jersey court may use various aspects of its enforcement power. If Helen arranges with a third party for parenting time between Rita and Daria and Rita fails to attend, causing plaintiff to incur financial burdens, then the family court could order economic sanctions against Rita. Further, should Rita attend visitation and take Daria from Helen's care, then the court would need to enforce the custodial aspects of the Canadian order. As to Daria specifically, Rule 5:3-7 allows the court to order counseling for a child if a parent fails to attend visitation or otherwise violates a custody order. In those circumstances, Daria would be dependent on the family court to secure relief by way of enforcing the terms of the Canadian order.

In A.E.C. v. P.S.C., 453 N.J. Super. 19, 29 (App. Div. 2018), we explained that either a declaration of emancipation or a custody order would justify a court in noting that a child is dependent on the court for the purposes of an SIJS finding. New Jersey's family court is under the obligation pursuant to the NJUCCJEA to recognize and enforce the Canadian order. Thus, the existence of New Jersey's obligation in this regard makes Daria dependent on our courts.

In O.Y.P.C., 442 N.J. Super. at 641-42, we indicated that the federal court determines the significance of the state court's legal conclusions.

14

Specifically, we explained that the "state court's role in the [SIJS] process 'is to make factual findings based on state law about the abuse, neglect, or abandonment, family reunification, and best interests of the child.'" Id. at 642 (quoting H.S.P., 223 N.J. at 215).

Finally, we disagree with the trial court's finding that "the juvenile is not dependent on <u>this</u> court and has not been placed in the custody of an agency or individual appointed by <u>this</u> court." The trial court here used the conjunction "and," but the federal regulations and federal statute use the disjunctive "or."

Specifically, prong two provides that the state court must determine whether the "juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court." H.S.P., 223 N.J. at 210 (referring to 8 C.F.R. § 204.11(c)(3) (2020); 8 U.S.C. § 1101(a)(27)(J)). Further, 8 U.S.C. § 1101(a)(27)(J)(i) states that a special immigrant juvenile is a juvenile

> who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States. . . .
> [(cited in <u>H.S.P.</u>, 223 N.J. at 209).]

Thus, the court further erred when it used an "and" clause and suggested that Daria had to be both dependent on the New Jersey courts and also placed in the

custody of an agency or individual appointed by the New Jersey courts. Our discussion does not end there, however.

Prong four of the SIJS analysis pertains to whether reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under state law. Id. at 210 (referring to 8 C.F.R. § 204.11(c)(6) (2020); 8 U.S.C. § 1101(a)(27)(J)).

On December 11, 2019, the court heard testimony from Rita, David, and Helen. However, the court did not inquire as to Rita's desires for Daria's placement, despite Rita's counsel stating in the September 26, 2019, hearing that Rita wanted Daria to live with Helen on a permanent basis and travel between the United States and Canada for visitation with her parents and half-sister.

Also on December 11, 2019, the court explained that the phrase "not viable" in prong four was problematic because there was no indication that the words were "temporarily limited" and thus, the phrase meant that the reunification had to be "non-viable ever." The court could not rule out that reunification in the Canadian court "might" occur in the future and could not find any cases in which a foreign custody order maintained parenting time and involved a SIJS petition.

In its written opinion dated February 4, 2020, the trial court analyzed each parent separately in its analysis of prong four, accepted Canada's findings of abuse and neglect, and applied the Canadian court's conclusions to New Jersey law. It held that reunification with David was not viable because it was highly unlikely that Daria would be permitted to live with him. However, it concluded that it "cannot go so far to say it is not viable as to [Rita]" because her parental rights were not terminated, she still had parenting time with Daria, Daria had been returned to her care in the past, and because she was not the "prime subject" of the Canadian allegations.

Based on our review of the record, the court's conclusions as to the viability of Daria's reunification with Rita are not entirely supported. There is little support in the limited record for the conclusion that Rita was not the "prime suspect" of the Canadian allegations of abuse. Indeed, she was the subject of the initial allegations in April 2012. While both Rita and David were responsible for the removal of the children in June 2013, Rita was the subject of CAST's concern in May 2016 due to her failure to keep Daria safe. Overall, the record reflects that Rita hit Remy, that Remy reported Rita also physically abused Daria, and that Rita allowed interactions between David and Daria despite the existence of a Canadian order prohibiting the contact.

A-2877-19T1

Furthermore, the court should have taken testimony from Rita to determine her desires for Daria's placement. An early statement in the record reflects that Rita wanted Daria to live with Helen on a permanent basis and travel between the United States and Canada for visitation. The record does not disclose whether Rita intended to challenge the Canadian order. Without this testimony, the court's conclusion that reunification with Rita cannot be classified as "not viable" is not supported.

The Court in H.S.P. recognized regarding the predicate state findings for an application for SIJS that if a statute's language is plain, then it must be enforced according to its terms. Id. at 213. Any interpretation of the five prongs is exclusively reserved for the federal government. Ibid. Specifically, the H.S.P. Court explained that the state court does not "have the jurisdiction to interpret federal immigration statutes." Id. at 200. Here, the trial court erroneously attempted to interpret the meaning of "not viable" to determine if there were any temporal limitations to the phrase.

Thus, the trial court must re-analyze prong two in its entirety and, also, prong four as it relates to Rita after taking additional testimony.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18