## Frances C. Winans, appellant,

*v.*

## Mary Luppie, respondent.

1. Under our statute providing for the adoption of children, the written consent of parents is requisite, as well when the child is under the age of fourteen years as afterwards.

2. Under the statute above mentioned, a parent may be deemed to have abandoned his child, so as to render his written consent to the adoption of the child unnecessary, when his conduct has evinced a settled purpose to forego all parental duties and relinquish all parental claims to the child.

3. When such an abandonment has taken place, and in consequence thereof the child has formed new ties and entered upon a new station in life, so that the resumption of parental claims would seriously jeopardize the child's happiness and welfare, the abandonment may lawfully be deemed irrevocable.

---

On appeal from a decree of the prerogative court. The opinion of the ordinary is reported in *Luppie* v. *Winans, 10 Stew. Eq. 245.*

*Mr. Cortlandt Parker*, for the appellant.

*Mr. John W. Taylor*, for the respondent.

Winans *v.* Luppie.

The opinion of the court was delivered by

Dixon, J.

On January 23d, 1882, David Winans and Frances C., his wife, presented their petition to the orphans court of the county of Essex, praying for the adoption of Mary Luppie, a child then about ten years old. The child's father had died in its early infancy, leaving a widow with three children, of whom this was the youngest. Her mother, Mary Luppie, was still living, and did not consent to, but opposed, the petition. Mr. Winans, one of the petitioners, was the child's legal guardian, having been appointed by said court January 18th, 1882, and, as such, gave his written consent to the adoption. On May 13th, 1882, the orphans court decreed that the prayer of the petition should be granted, holding that the consent of the child's mother was not necessary, because the child was under fourteen years of age, and also because the mother had abandoned the child. On appeal by Mrs. Luppie to the prerogative court, it was there, on June 23d, 1883, adjudged that the statute required the consent of parents to the adoption of a child, as well when it was under fourteen years old as afterwards, and that Mrs. Luppie had not abandoned her child, and consequently that the orphans court had no authority to decree in favor of the adoption. On June 25th, 1883, Mr. Winans having died in the meantime, Mrs. Winans appealed to this court.

The decision of the legal questions presented depends upon "An act providing for the adoption of children," approved March 9th, 1877. *Rev. p. 1345.* The first section, after enacting that children may be adopted, has the following language:

" Provided, that, if such child or children be of the age of fourteen years or over, the written consent of such child or children to such adoption, duly acknowledged, must be obtained and presented with the petition, and also the written consent of the parent or parents, if living and not hopelessly intemperate or insane; if both parents should be dead, or unknown, or hopelessly intemperate or insane, or shall have abandoned the child or children sought to be adopted, then and in such case the written consent, acknowledged as aforesaid, must be obtained from the legal guardian of such child or children; and if there be no legal guardian, then such consent must be obtained from some discreet and suitable person appointed by the court to be the next friend of such child or children sought to be adopted."

It cannot be denied, I think, that on the surface the language of the clauses just quoted seems to require the consent of parents (if living &c.) only when the consent of the child to be adopted is required; *i. e.*, when it has reached the age of fourteen years. But the spirit of our laws and the indubitable reason of this enactment do not admit of such a superficial interpretation. The regard entertained for the relation between parent and child, which dictated the enactment, that the consent of parents to the legal severance of that relation was requisite when the child was fourteen years of age or over, would still more strongly impel the legislature to require such consent, when the tenderer age of the child was in the greater need of parental protection and appealed the more forcibly to parental concern. Not only would such an interpretation fail in ascertaining when the consent of parents was indispensable, but also in ascertaining when it was not. For, literally interpreted, the statute requires the consent of parents, "if living and not hopelessly intemperate or insane," and then, if they "be unknown, or shall have abandoned the child," requires also the consent of the legal guardian or next friend. Yet it would be absurd to argue that the legislature did not mean to dispense with the consent of unknown parents. The statute is loosely drawn, and needs judicial construction as well as interpretation.

We understand the clauses above quoted to consist of two separate provisos—the first requiring the consent of the child, in case it has attained the age of fourteen years; the second, without regard to the child's age, requiring the consent of parents, if living and known and not hopelessly intemperate or insane, and if they have not abandoned the child, or when, for any of these causes, the consent of parents is dispensed with, then the consent of the legal guardian, or, if none, of the next friend, is requisite.

We are therefore brought to the second question in the cause, whether the mother had abandoned the child, and so rendered it inessential to obtain her written consent to the adoption.

The statutory notion of abandonment does not necessarily, we think, imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may, and in our

Winans *v.* Luppie.

judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. Such a purpose, clearly manifested, certainly forms a more reasonable ground for permitting judicial discretion to decide whether another may assume these claims and duties, than does the signature of the parent, which a mere impulse may induce. It does not follow that the purpose may not be repented of, and in proper cases all parental rights again acquired, including this statutory right of preventing adoption by withholding consent; but, when once the abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child. When, in pursuance perhaps of the abandonment, new ties have been formed and a new station in life has been taken by the child, it might be unjust, that, solely because of the parent's caprice, legal sanction should be refused to the new conditions. Under such circumstances, a court might lawfully deem the abandonment irrevocable, so far as the claims of the parent were concerned.

It remains to determine whether an abandonment of this character was shown.

The facts of the case need not be here detailed. The parties will find them stated, substantially as we believe them to be, in the opinion of the learned judge who presided in the Essex orphans court. They indicate that, from the time when the child was less than a year old until it was about five years of age, it was permitted by Mrs. Luppie to live in Mr. Winans's family, where it was called by his name and treated in all respects as a daughter. Then for several months it lived with Mrs. Luppie; but at the end of that period, she, finding her circumstances too straitened, and that Mr. and Mrs. Winans were anxious and abundantly able to educate and bring up the child as their own, gave it up to them entirely, saying that she would never ask for it again except to see it, and that she wanted them to adopt it. From that time until the little girl was ten years old she was nurtured, maintained and educated, both secularly and religiously, as a daughter of Mr. and Mrs. Winans, in a

20

manner warranted by their considerable wealth but far beyond the means of Mrs. Luppie. She also received a new Christian name, as well as the name of Winans, to which she had been accustomed from infancy. Growing up under these circumstances, her habits, tastes and affections naturally became conformed to them, so that a disruption of the relations thus established must have seriously endangered her happiness. That her welfare was most likely to be promoted by their continuance, is too plain for doubt, in view of the differences between the social station in which she had been trained and that occupied by her mother. In this condition of affairs it was that Mrs. Luppie attempted to re-assert her maternal claims and to withdraw the child from Mr. Winans's home, and thereupon these proceedings for her legal adoption were instituted.

In our judgment, Mrs. Luppie definitely determined, when her child was between five and six years old, to transfer to Mr. and Mrs. Winans all her parental duties and to surrender to them all her parental claims with regard to this little girl, and continued in that purpose and a course of conduct accordant with it for so long a time that she could not, without great injustice to her daughter and those who in consequence had become attached to her, resume the rights and obligations which she had before renounced. She had therefore, within the statutory sense, abandoned her child, and her consent was not legally necessary to the adoption.

For these reasons, we think the decree of the prerogative court should be reversed, and the decree of the orphans court should be affirmed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Dixon, Garrison, Magie, Scudder, Van Syckel, Brown, Clement, Cole, Smith, Whitaker—11.

The opinion of the orphans court above referred to is reported in *5 N. J. L. J. 250.*—Rep.