# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1382-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

R.T.P.,

      Defendant-Appellant,

and

S.P.,

      Defendant.

_____

IN THE MATTER OF D.P.T.,
a minor.

_____

      Submitted March 3, 2021 – Decided April 8, 2021

      Before Judges Fuentes and Whipple.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FN-20-0079-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Foster, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane Schuster, Assistant Attorney General, of counsel; Andrea Barilli, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant R.T.P. (Rosa[1]), appeals from the June 4, 2018 order of the Family Part, entered after a fact-finding hearing, determining that she had neglected her daughter D.P.T. (Donna). We affirm.

The following facts were drawn from the record. Rosa moved to the United States in October 2001, approximately two years after Donna was born in Guatemala. Donna lived with her father[2] in Guatemala until she moved to

---

[1] For the sake of anonymity and ease of reference, we utilize pseudonyms to protect the parties and the child. See R. 1:38-3(d)(13).

[2] Donna's father remains in Guatemala and was not a part of these proceedings.

2

A-1382-19

defendant's apartment in Plainfield. Donna came to the United States in January 2016 after her father paid someone to bring her here to live with Rosa.

The Division of Child Protection and Permanency's (Division) involvement began on the night of October 6, 2017, when it received a referral from Officer Inesha Nash of the Plainfield Police Department, that Rosa had kicked her fifteen-year-old daughter, Donna, out of the house a few days earlier. This altercation included grabbing Donna by the hair because she did not pay rent. Officer Nash told the Division that Donna did not attend school, and instead, was forced to work. At that time, Donna was surreptitiously staying with her eighteen-year-old brother H.T.P. (Harry) in the same place until October 6, when Donna and her mother had a second altercation, leaving Donna with nowhere to live. Officer Nash also stated Donna did not want to return, and it was unclear if Rosa would allow Donna to return home.

A Division worker, Yolanda De Pareja, from the Division's Intake Unit, who arrived after the Division's Special Response Unit (SPRU), assessed the situation by going to the Plainfield Police Department and speaking with Rosa and Donna. Donna reported that her mother made her work and pay rent, and that she wanted to attend school, but could not, because she was forced to work full time. Donna also disclosed that, although she was undocumented, she had

3

obtained various jobs under someone else's social security number with false papers, which her mother procured for her. Donna was also able to display pay stubs from these various jobs. The Plainfield police confiscated the false documents from Donna. At that point, Donna told the investigator that she wanted to go back home to her mother's but thought her mother did not want her. She described a contentious relationship with Rosa since she came from Guatemala.

Rosa gave a different version of what had been happening, stating she wanted Donna to attend school, but Donna refused. She also said she wanted Donna to work to learn financial responsibility but denied forcing her to drop out of school. De Pareja confronted Rosa with the allegation that Donna was being forced to pay rent, and Rosa admitted that she did ask Donna to contribute to the rent. As she explained, Rosa expected Donna to contribute to the rent by working, since Donna was not in school, and Rosa did not want Donna to sit at home and "do nothing." Rosa also explained that the altercations with Donna occurred because she had found Donna in the home with a male and said Donna did not respect her ever since she left her in Guatemala twelve years ago. The Division worker emphasized that Donna should be in school and that, because

4

of her age, she could only work certain hours. De Pareja also informed Rosa that if she did not take Donna home, it could be considered abandonment.

Ultimately, Rosa and Donna agreed to go back home, where a Division SPRU worker, Maria Perez, interviewed Harry. He reported that Donna and her mother fought over Donna's boyfriend being in the house and that was the reason why Donna left. Harry reported that Rosa requested he and Donna contribute $300 each toward the rent. By the end of this interaction, Donna agreed to abide by her mother's rules, and Rosa agreed not to demand money from her daughter and to get her re-engaged with school.

A week later, a Division worker met with the family again. Donna reported Rosa continued to force her to work to pay rent and that her mother had signed her out of school. Rosa asserted Donna was refusing to go to school, and because of that, Donna was going to have to contribute to household expenses.

On December 5, 2017, Division investigator Yolanda De Pareja met with Plainfield High School's truancy officer, Juanita Toledo-Hall, who reported that Rosa officially withdrew Donna from school on October 23, and that Rosa was contacted as early as September 22 about her daughter's lack of attendance. During the previous academic year, Donna had missed twenty-one days of school, was tardy for sixteen days, and truant twenty days. Toledo-Hall did

A-1382-19

confirm Donna performed well in her classes, when she was there. But Donna had not attended school at all during the 2017-2018 school year. The Division entered a finding of "unfounded" as to the allegation that Rosa failed to provide basic needs and "not established" regarding Donna's educational neglect.

The same day, Donna called De Pareja to report that her mother moved to another apartment in the same town three weeks earlier, and her landlord was asking for the rent. Donna did not know what to do. When the worker finally reached Rosa, she responded, "take her."

De Pareja interviewed Donna at her home and confirmed Rosa's room appeared vacant. The police had taken Donna's fraudulent documents so she could no longer work; her mother had left the home three weeks earlier; she had no money for rent; and her brother was providing her with food. Donna disclosed that before she left the home, Rosa allowed an unrelated man to spend the night in Donna's room, and he had made unwanted sexual advances toward Donna. Donna denied knowing where her mother was. De Pareja tried calling Rosa, to no avail, so the Division executed an emergency removal[3] of Donna. Later in the day, De Pareja spoke with Rosa on the phone. She denied

---

[3] An emergency removal in this instance is also referred to as a Dodd removal, pursuant to N.J.S.A. 9:6-8.1 to -8.82.

abandoning her daughter, but when asked what arrangements she had made to provide Donna with food and water, Rosa responded that Donna "has not asked for either and has provided for herself." Rosa admitted that she was unsure how Donna would support herself and said that the Division could keep Donna, because she could no longer control her, and no longer wanted to assume responsibility for her.

Later, the Division worker found Rosa at work and served her with the emergency removal paperwork. Rosa denied abandoning Donna and emphasized that, while not contributing to Donna's basic needs of food, water, and supervision, she made sporadic visits to the home. Rosa also claimed that Donna was stealing her money and selling her perfumes. Rosa claimed she moved out about a week ago, not three weeks earlier as Donna alleged, to keep her eight-year-old youngest child from being exposed to Donna's defiant behaviors. Under these circumstances, the Division found sufficient evidence to establish Rosa had abandoned Donna.

The fact-finding trial was held on June 4, 2018. Donna, Officer Nash, and De Pareja testified. When Donna testified, she confirmed a series of text messages, including Rosa asking Donna and her brother for $380 in rent, each. Donna also testified about being uncomfortable around the men her mother

7

knew, including one of their landlords, who offered her alcohol and said he liked her. She also mentioned her mother dispatching a man Rosa knew to pick Donna up from work, but she refused to go with him because she felt uncomfortable.

De Pareja testified Donna was signed out of school at the end of October 2017 and it was apparent Donna and her older brother were left behind when defendant moved out. Officer Nash corroborated the details of her interaction with Donna when she first arrived to the police station in October.

The court entered an oral decision finding Rosa had abused and neglected Donna by abandoning her as defined under N.J.S.A. 9:6-8.21(c)(5). The court found that the Division's witnesses were credible and corroborated the Division's investigative determinations. The judge noted Rosa had an opportunity to testify to refute the assertions of the Division but chose not to. The court found it significant that, after the Division became involved in October 2017, Rosa never informed her caseworker that she was leaving the home for a period of three to four weeks, instead, leaving Donna to pay her own rent.

Ultimately, the court held that Rosa's conduct met all three prongs of the abandonment section of Title 9 by a preponderance of the evidence. First, Rosa willfully and recklessly abandoned her daughter by leaving her on her own; second, Rosa failed to take Donna back even after the Division gave her the

opportunity to make a plan for her return; and third, Donna is now supported at the expense of the public as a result. The court also explained Rosa could have taken advantage of therapeutic support offered by the Division but failed to do so, and instead, took matters into her own hands by leaving the home. The court entered an order the same date.

On June 27, 2018, the Family Part judge entered a special findings order for Donna to be able to apply to the United States Citizenship and Immigration Services for a Special Immigrant Juvenile (SIJ) Status visa. The court found that Rosa neglected Donna by not providing her with a safe and appropriate home. Rosa also failed to provide her with basic needs including food, clothing and shelter; thus, Donna had to work night shifts at a factory. The court made a finding of abandonment against Rosa and held Donna could not return to her home country of Guatemala. Primarily, she could not return because her father had not provided her with a safe or appropriate home after he sustained injuries from a serious accident; he allowed her to travel alone to New Jersey at the age of fourteen; and he had failed to provide financial, educational, or medical support for her while she was in New Jersey. This appeal followed.

Defendant raises the following issues on appeal.

> POINT I: AS A MATTER OF LAW, THIS COURT
> SHOULD REVERSE THE TRIAL COURT'S

JUDGMENT, PURSUANT TO N.J.S.A. 9:6-8.21(c)(5) AND N.J.S.A. 9:6-1, THAT [ROSA] ABUSED AND NEGLECTED HER DAUGHTER BY ABANDONING HER, BECAUSE THAT JUDGMENT WAS THE RESULT OF MISINTERPRETATION OF THOSE STATUTES, RESULTING IN A MISAPPLICATION OF THE LAW THAT IS UNSUPPORTED BY OUR COURTS' INTERPRETATION AND APPLICATION OF THE TITLE 9 DEFINITION OF ABANDONMENT AS A FORM OF ABUSE AND NEGLECT.

A. THE TRIAL COURT'S DETERMINATION THAT [DIVISON] HAD ESTABLISHED THE FIRST TWO PARTS OF THE TITLE 9 ABANDONMENT DEFINITION WAS ERROR AS A MATTER OF LAW, BECAUSE THE PARTICULAR ACTS BY [ROSA] THAT THE COURT VIEWED AS HAVING SATISFIED N.J.S.A. 9:6-1(a) AND (b) PREDATED ANY OF THE ACTS THAT PRECIPITATED [DIVISION]'S ALLEGATION THAT [ROSA] HAD ABUSED AND NEGLECTED HER DAUGHTER BY ABANDONING HER.

B. THE TRIAL COURT'S RULING THAT THE N.J.S.A. 9:6-1(c) DEFINITION OF ABANDONMENT HAD BEEN MET IN THIS MATTER SHOULD BE REVERSED AS A MATTER OF LAW, AS THE FINDING ITSELF DOES NOT REFLECT A WILLFUL, SETTLED PURPOSE ON THE PART OF [ROSA] TO PERMANENTLY ABANDON CONTROL AND CUSTODY OF HER DAUGHTER TO THE CARE OF THE STATE.

POINT II: THE TRIAL COURT VIOLATED [ROSA]'S RIGHT TO DUE PROCESS BY BASING ITS ABANDONMENT JUDGMENT ON HER PERCEIVED FAILURE TO SATISFY AN

10

"AFFIRMATIVE OBLIGATION" IMPOSED AFTER-THE-FACT BY THE COURT WITHOUT ANY SUPPORT IN THE LAW, AND BY CONSIDERING EVIDENCE OF PARENTAL ACTS THAT PRECEDED [THE DIVISION]'S DECEMBER 2017 ALLEGATION AS SUBSTANTIVE PROOF OF ABANDONMENT IN GENERAL, WITHOUT THE ACCUSED HAVING HAD REASONABLE NOTICE BEORE TRIAL THAT SUCH EVIDENCE WOULD BE SO CONSIDERED.

Our standard of review of a court's abuse or neglect determination is limited. When a trial court's fact-finding is based on competent, material and relevant evidence, we ordinarily defer to its findings, because a trial court "has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). We owe no deference to the trial court's legal conclusions. N.J. Div. of Youth & Family Servs. v. S.H., 202 N.J. 145, 183 (2010). Moreover, "'where the focus of the dispute is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' the traditional scope of review is expanded." M.M., 189 N.J. at 279 (alterations in original) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993)).

In Lavigne v. Family & Children's Soc'y, 11 N.J. 473, 480 (1953), the Court set forth the standard required for the State to prove abandonment under

N.J.S.A. 9:6-8.21(c)(5) as "any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." (quoting Winans v. Luppie, 47 N.J. Eq. 302, 304 (E. & A. 1890)). The facts here support how Rosa's conduct amounted to a "settled purpose" to forgo her parental rights. An "abused or neglected child" is defined in Title 9 as, among other things, "a child who has been willfully abandoned by his parent or guardian, as herein defined[.]" N.J.S.A. 9:6-8.21(c)(5). Abandonment:

> Shall consist in any of the following acts by anyone having the custody or control of the child: (a) willfully forsaking a child; (b) failing to care for and keep the control and custody of a child so that the child shall be exposed to physical or moral risks without proper and sufficient protection; (c) failing to care for and keep the control and custody of a child so that the child shall be liable to be supported and maintained at the expense of the public, or by child caring societies or private persons not legally chargeable with its or their care, custody and control.
>
> [N.J.S.A. 9:6–1.]

Thus, the parent must have engaged in a course of conduct that evidences intentional acts that will sever him or her from parental duties and forgo any claim to the child. H.S.P. v. J.K., 435 N.J. Super. 147 (App. Div. 2014). Having reviewed the record, we are satisfied there is substantial evidence in the record to support the court's determination. We add the following.

A-1382-19

The judge stated he was deciding this case under N.J.S.A. 9:6-8.21. However, he directly listed the criteria laid out by N.J.S.A. 9:6-1 on the record. Although Rosa raises this as an issue, it is not a critical error. See N.J.S.A. 9:6-8.21(c)(5) ("[A] child who has been willfully abandoned by his parent or guardian, as herein defined [by N.J.S.A. 9:6-1]."). Therefore, even if the court wanted to rely on N.J.S.A. 9:6-8.21(c)(5), it could not do so without referencing N.J.S.A. 9:6-1.

We reject Rosa's assertion the judge improperly relied on her decision to relinquish custody of Donna. "The statutory notion of abandonment . . . import[s] any conduct on the part of the parent, which evinces a settled purpose to forego all parental duties, and relinquish all parental claims to the child." Winans, 47 N.J. Eq. at 304-05. Similarly, in the context of a termination of parental rights case, "[a]bandonment requires a finding that parents, although physically and financially able to care for their children, willfully forsook their parental responsibilities. The concept of abandonment entails a willful surrender or intentional abdication of parental rights and duties." In re Guardianship of K.L.F., 129 N.J. 32, 39 (1992). We also reject Rosa's contention that the abandonment proceeding was designed to achieve Donna's path to SIJ status, as an attempt to shift blame for Donna's abandonment onto

her.

The only relevant question before the court was whether defendant "abandoned" her daughter, by leaving her on her own and forcing the Division to assume care, custody, and control of Donna. See N.J.S.A. 9:6-1. The Family Part judge correctly found that a parent is not allowed to abandon a child merely because that child is difficult to control or has mental health issues, since neither circumstance mitigates the fundamental responsibility of the parent to provide care for her child. But for the Division's intervention, defendant left Donna without a safe and secure place to stay, thereby exposing the child to an actual and imminent risk of harm. In short, defendant "willfully forsook [her] parental responsibilities." K.L.F., 129 N.J. at 39.

The remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1382-19