# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1280-21

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

R.L.S., R.S., and N.L.,

      Defendants-Respondents.

_____

IN THE MATTER OF J.L.-S.,
a minor,

      Appellant.

_____

Submitted August 30, 2022 – Decided September 6, 2022

Before Judges Haas and Mitterhoff.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0034-20.

Joseph E. Krakora, Public Defender, Law Guardian, attorney for appellant (Meredith Alexis Pollock,

Deputy Public Defender and Craig D. Robin, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent New Jersey Division of Child Protection and Permanency (Sookie Bae-Park, Assistant Attorney General, of counsel; Kathryn Kolodziej, Deputy Attorney General, on the brief).

PER CURIAM

Appellant J.L.-S. (Jason)[1] is a child who was born in 2003 in Guatemala. When Jason was fourteen years old, his biological parents, defendants N.L. and R.S., hired a "coyote" to transport him to the United States. Jason initially lived with his brother, R.L.-S. In 2019, the Division of Child Protection and Permanency (Division) obtained custody of Jason after he incurred juvenile charges while in his brother's care.

Jason's parents repeatedly advised the Division that they could not care for the child in Guatemala and they refused to make any provision for his custody or support. The trial court approved a permanency plan of independent living for Jason, and found it was not safe to return the child to the parents in the foreseeable future.

---

[1] We refer to appellant by a fictitious name and to defendants by initials to protect their privacy. R. 1:38-3(d)(12).

2

A-1280-21

Jason's Law Guardian sought to obtain "special immigrant juvenile" (SIJ) status for Jason under 8 U.S.C.A. § 1101(a)(27)(J)(i). Obtaining SIJ status provides "a form of immigration relief permitting [a child from another country] to obtain lawful permanent residency [in the United States] and, eventually, citizenship." H.S.P. v. J.K., 223 N.J. 196, 200 (2015). A child residing in New Jersey who seeks SIJ status must apply to a Superior Court judge for a predicate order finding the child meets the statutory requirements. Ibid. The child must then petition the United States Citizenship and Immigration Services (USCIS) and demonstrate statutory eligibility.

The trial court denied Jason's application for a predicate order after finding that he failed to demonstrate it was not viable for him to return to live in Guatemala with his parents. Jason filed a motion for reconsideration, supported by certifications from his parents making clear they would not care for him if he was returned to Guatemala. The trial court denied this application after declining to consider the parents' certifications.

By leave granted, Jason appeals from the trial court's orders. For the following reasons, we reverse and remand for the prompt entry of the predicate order necessary for Jason to pursue SIJ status.

A-1280-21

We have already set forth the basic undisputed facts underlying Jason's application for the predicate order. As noted, the trial court granted the Division custody, care, and supervision of Jason on August 22, 2019. On December 16, 2019, the court found that Jason's parents were unable to adequately care for him and did not want him to return to Guatemala.

Jason's Law Guardian filed the application for the predicate order on July 28, 2020. The Division consented to the entry of the order. A month later, the trial court again found that Jason required the care and supervision of the Division because his parents were unable to care for him. The court also issued a permanency order, approving a permanency plan for Jason of independent living because it was not safe to return the child to Guatemala in the foreseeable future.

Because the trial court had not yet ruled on Jason's request for a predicate order, the Law Guardian renewed the request on November 18, 2020. The court held a hearing on January 8, 2021 at which Jason and his Division caseworker testified. Jason confirmed that his parents had not provided for him since he came to the United States and would not be able to care for him if he was returned to Guatemala. The caseworker stated the parents did not want Jason to

be returned because they could not care for him and had no plans to do so in the future.

On March 3, 2021, the trial court denied Jason's application for a predicate order. The court found Jason's parents did not abuse, neglect, or abandon him and ruled there was no evidence in the record to support his claim that reunification with one or both of his biological parents was not viable. The court also found no evidence that the parents were unwilling to care or provide for Jason.

To address these findings, the Law Guardian filed a motion for reconsideration on Jason's behalf, and included his parents' certifications. As noted above, these certifications made clear that Jason's parents were unable to care for him and they did not plan to do so.

While this motion was pending, a different judge issued an order on June 30, 2021, again finding that Jason's parents were unable to adequately care for him. On August 25, 2021, this judge issued another permanency order, continuing to approve a permanency plan for Jason of independent living and again finding that it was not safe to return the child to Guatemala.

A-1280-21

On November 8, 2021, the original judge denied Jason's motion for reconsideration after declining to consider Jason's parents' certifications. We thereafter granted Jason's motion for leave to appeal.

"The process for obtaining SIJ status is 'a unique hybrid procedure that directs the collaboration of state and federal systems.'" H.S.P., 223 N.J. at 209 (quoting In re Marisol N.H., 979 N.Y.S.2d 643, 645 (N.Y. App. Div. 2014)). A two-step process is required to obtain SIJ status. Id. at 200. First, the juvenile, or someone acting on his behalf, must petition the Family Part for an order finding the juvenile satisfies the following SIJ criteria:

> (1) The juvenile is under the age of 21 and is unmarried;
>
> (2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court;
>
> (3) The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles;
>
> (4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; and
>
> (5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence . . . .

A-1280-21

[<u>Id.</u> at 210 (citation omitted).[2]]

In making these findings, the Family Part is "not rendering an immigration determination." <u>Ibid.</u> (quoting <u>Marcelina M.-G. v. Israel S.</u>, 973 N.Y.S.2d 714, 721 (N.Y. App. Div. 2013)). Rather, the findings serve as a prerequisite that enables the juvenile to submit his application for SIJ status to the USCIS. <u>Ibid.</u> If the USCIS approves the application, the juvenile will then be granted SIJ status. <u>Ibid.</u> Thereafter, the juvenile is permitted to seek lawful permanent residency and eventually citizenship. <u>Ibid.</u>

Our Supreme Court has emphasized that "[t]he Family Part's sole task is to apply New Jersey law in order to make the child welfare findings required by" the federal statutory scheme. <u>Id.</u> at 200. In performing this function, the Family Part must apply its expertise "regardless of its view as to the position likely to be taken by the federal agency or whether the minor has met the requirements for SIJ status." <u>Id.</u> at 200-01.

In reviewing the Family Part's determination, we "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." <u>Griepenburg v. Twp. of Ocean</u>, 220 N.J. 239, 254 (2015)

---

[2] The fourth criterion above is the only one that is at issue in this appeal. The trial court found that Jason met all the other requirements needed to obtain a predicate order.

(citing <u>Rova Farms Resort, Inc. v. Investors Ins. Co.</u>, 65 N.J. 474, 483-84 (1974)). The court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." <u>Cesare v. Cesare</u>, 154 N.J. 394, 411-12 (1998). However, we owe no deference to legal conclusions drawn by the trial court. <u>Manalapan Realty, LP. v. Twp. Comm.</u>, 140 N.J. 366, 378 (1995).

Applying this standard of review, we disagree with the trial court's legal conclusion that Jason's parents did not abuse, neglect, or abandon Jason under the lens of New Jersey law. A child is abused or neglected under N.J.S.A. 9:6-8.21(c)(4)(a) if: "(1) the child's physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired; and (2) the impairment or imminent impairment results from the parent's failure to exercise a minimum degree of care." <u>N.J. Div. of Child Prot. & Permanency v. A.B.</u>, 231 N.J. 354, 369 (2017).

In <u>G.S. v. Department of Human Services</u>, the Supreme Court found "a guardian fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." 157 N.J. 161, 181 (1999). In determining whether a parent did not exercise a minimum degree of care, a judge must also "account for the surrounding circumstances," because

"[a]buse and neglect cases are 'fact-sensitive.'" N.J. Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 180 (2015) (quoting N.J. Div. of Youth & Fam. Servs. v. T.B., 207 N.J. 294, 309 (2011)).

The record plainly illustrates that Jason's parents sent him with a "coyote" without their supervision for the long trek from Guatemala to the United States. Since that time, they have done nothing to care for or support Jason. Under N.J.S.A. 9:6-1, abandonment consists of a parent "willfully forsaking a child . . . ." The statute further states that a parent abandons a child by "failing to care for and keep the control and custody of a child so that the child shall be exposed to physical or moral risk without proper and sufficient protection . . . ." Ibid. Undeniably, under New Jersey law, a parent could be considered to have neglected or abandoned a child if he or she voluntarily allowed the child to travel for thousands of miles unsupervised, even if the parent did so for the benefit of the child's well-being. In Lavigne v. Family & Children's Society, the Supreme Court explained:

> The statutory notion of abandonment does not necessarily, we think imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.

[11 N.J. 473, 480 (1953) (quoting Winans v. Luppie, 47
N.J. Eq. 302, 304-05 (1890)).]

Here, the record fails to support the trial court's finding that Jason's parents did not neglect or abandon him when they sent him to this country and then refused to care for him. Instead, his parents' actions demonstrate a clear intention to forego their parental responsibilities and place Jason's welfare totally in the hands of his brother and thereafter the Division. Under these circumstances, the trial court's determination that it is still viable to return Jason to his parents in Guatemala cannot stand.

In addition, the trial court failed to recognize that in its permanency orders, it had already determined that Jason required the Division's care and supervision to ensure his health and safety under N.J.S.A. 30:4C-12. Indeed, the court approved the Division's independent living plan for Jason because reunification with his parents was not possible in light of their steadfast refusal to care for him.[3] These findings further support the conclusion that Jason adequately demonstrated that reunification with one or both of his parents was

---

[3] The Law Guardian submitted certifications from Jason's parents stating they had no plan to ever care for him again in support of Jason's motion for reconsideration. Because these materials were not available until after the trial court denied the application for a predicate order, the trial court mistakenly declined to consider them in denying the motion.

not viable due to abuse, neglect, or abandonment <u>or a similar basis under State law</u>.

Under these circumstances, Jason met all five criteria for the entry of a predicate order that will enable him to pursue SIJ status. Accordingly, we reverse and remand with instructions to the trial court to promptly issue the predicate order requested by Jason.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1280-21